Mitchell J. Auslander (MA 1224)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8201

*Attorneys for the Marsh Defendants*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
TIARA CONDOMINIUM ASSOCIATION,                               :
INC.                                                         :
                                                             :
                              Plaintiff,    :    CASE NO. 07-CIV-9392
                                                             :
            - against -                     :    Judge Harold Baer, Jr.
                                                             :
MARSH & MCLENNAN COS., INC., *et al.*,                       :
                                                             :
                              Defendants.   :
                                                             :
-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF THE MARSH
DEFENDANTS' MOTION TO TRANSFER VENUE**

                                                    **DATED: JANUARY 14, 2008**

TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................3

ARGUMENT ...........................................................................................................................6

    I. RELEVANT LEGAL STANDARD FOR TRANSFER MOTIONS ...........................6

    II. THIS ACTION "MIGHT HAVE BEEN BROUGHT' IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA....................6

    III. THE BALANCE OF CONVENIENCE AND THE INTEREST OF JUSTICE STRONGLY WEIGHS IN FAVOR OF TRANSFERRING THIS CASE TO THE SOUTHERN DISTRICT OF FLORIDA........................................................................7

        A. Convenience of the Witnesses. ..........................................................................8

        B. Availability of Process. ....................................................................................10

        C. Convenience of the Parties. .............................................................................11

        D. Locus of the Operative Facts ...........................................................................11

        E. Location of Relevant Documents.....................................................................12

        F. The Relative Means of the Parties. ..................................................................12

        G. Familiarity of Each District with the Governing Law. ....................................12

        H. Plaintiff's Choice of Forum. ............................................................................14

        I.. Judicial Economy and Interest of Justice. .......................................................14

CONCLUSION ......................................................................................................................15

4089940.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*800-Flowers, Inc. v. Intercontinental Flowers, Inc.*, 860 F.Supp. 128 .................................11

*Abdelhamid v. Altria Group, Inc.*, 2007 U.S.Dist. LEXIS 33938 .......................................13

*Arrow Electrics Inc. v. Ducommum, Inc.*, 724 F.Supp. 264 ................................................14

*Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549 ..........................................................7

*In re Cuyahoga Equip. Corp.*, 980 F.2d 110 ..........................................................................6

*Electric Workers Pension Fund, Local 103 v. Nuvelo, Inc.*, 2007 U.S.Dist. LEXIS 52246 ........................................................................................................................................7

*Ferens v. John Deere Co.*, 494 U.S. 516 .........................................................................12, 14

*Fuji Film Co. v. Lexar Media, Inc.*, 415 F.Supp.2d 370 ....................................................6, 14

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 ..........................................................................10, 11

*Indian Harbor Insurance Co. v. Factory Mutual Insurance Co.*, 419 F.Supp.2d 395 .........................................................................................................................................11, 15

*Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.*, 2006 U.S.Dist. LEXIS 34460 .......................6

*La Luna Enterprise, Inc. v. CBS Corp.*, 74 F.Supp.2d 384 ..................................................13

*Miller v. Bombardier Inc.*, No. 93 Civ. 0376, 1993 WL 378585 .........................................15

*Mitsui Marine & Fire Insurance Co. v. Nankai Travel International*, 245 F.Supp.2d 523 ........................................................................................................................14

*Montgomery v. TAP Enterprise, Inc.*, 2007 U.S.Dist. LEXIS 12702 ....................... 8, 10, 14

*Posven, C.A. v. Liberty Mutual Insurance Co.*, 303 F.Supp.2d 391 ......................................6

*Rosenberg v. Pillsbury Co.*, 718 F.Supp. 1146 ....................................................................13

*Royal Ins. Co. of Am. v. Tower Records, Inc.*, 2002 WL 31385815 ................................9, 11

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 ........................................................6

4089940.1

*Student Advantage, Inc. v. International Student Exch. Cards, Inc.*, 2000
U.S.Dist. LEXIS 13138 ..........................................................................................12

*Transatlantic Reinsurance Co. v. Continental Insurance Co.*, 2003 U.S.Dist.
LEXIS 20933 .......................................................................................................11

*Van Dusen v. Barrack*, 376 U.S. 612..............................................................................6

### FEDERAL STATUTES

28 U.S.C. § 1391(a)(2)........................................................................................................7

28 U.S.C. § 1404....................................................................................................1, 2, 3, 6

Defendants Marsh & McLennan Companies, Inc., Marsh Inc. and Marsh USA Inc. (collectively, "Marsh") respectfully submit this Memorandum of Law in Support of the Marsh Defendants' Motion to Transfer Venue to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

This action has no connection whatsoever with New York. This case involves a dispute between a Florida insurance broker and its Florida client concerning a wind damage insurance policy placed in Florida covering a luxury high-rise condominium in Palm Beach County, Florida that was damaged by two hurricanes. The filing of this action in New York is a transparent attempt to forum shop. Recently, Judge Hurley of the Southern District of Florida, where this case belongs, entered final judgment against Tiara in a breach of contract action brought by its public insurance adjuster involving the same hurricane damage that is at issue here. (*See* Declaration of Gregory Conway ("Conway Decl.") ¶¶ 3-5; Exs. A-C.) In that same case, Judge Hurley held that Tiara could not assert a negligence claim, like the one asserted in this case, because Florida's economic loss rule bars such a claim. (*Id.* ¶ 4; Ex. B.) As demonstrated in the Marsh Defendants' Motion to Dismiss filed simultaneously herewith, Tiara's negligence claim against Marsh should be barred for the very same reason. Faced with the prospect of this case being before the same judge, Tiara decided to try its luck with another federal judge sitting in a judicial district more than 1,200 miles away from where this case belongs. This improper litigation tactic unnecessarily inconveniences the parties and witness and increases the cost of trying this case. As demonstrated below, this action should be transferred to the Southern District of Florida for the convenience of the parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a).

4089940.1

In determining whether to transfer an action under 28 U.S.C. § 1404(a), courts in this judicial district consider various factors. The convenience of the witnesses is usually the most important factor and this factor strongly weighs in favor of the Southern District of Florida. The vast majority of the material witnesses who may be called to testify in this action reside in Florida. Moreover, if this case remains in New York, this Court will not be able to compel witnesses to appear at trial because they are outside of its subpoena power. The Southern District of Florida also is a more convenient forum for the parties. Tiara is a Florida corporation with its principal place of business in Florida. Tiara has no connection with New York. The Marsh USA office that placed the policy at issue here also is located in Florida, as are the Marsh employees who did the work.

The location of the operative facts is an important consideration in deciding a transfer motion. None of the operative facts giving rise to this dispute occurred in New York. The wind damage policy was negotiated, procured, and issued in Florida. Marsh USA's office in Florida placed the policy for Tiara. The insurance company that sold the policy to Tiara is a Florida-based insurer created by the Florida Legislature to provide property insurance to Florida residents. *See* §627.351(6)(a), Fla. Statutes (2007) ("It is the public purpose of this subsection to ensure the existence of an orderly market for property insurance for Floridians and Florida businesses"). All of the property damage took place in Florida. And the alleged negligence and fraud occurred in Florida. There simply is no connection between any of the operative facts and New York. This factor strongly weighs in favor of transfer to the Southern District of Florida.

While the plaintiff's choice of forum generally is given substantial weight, this factor is greatly diminished where the plaintiff selects a forum other than its home forum and the claims bear no material relationship with the chosen forum. Here, Tiara is based in Florida and none of

4089940.1

the operative facts took place in New York. Marsh seeks to transfer this case back to plaintiff's home in Florida. Under these circumstances, Tiara's choice of forum does not weigh against transfer. Moreover, Florida law governs the claims at issue here.

Transferring venue to the Southern District of Florida also promotes judicial economy and efficiency because that judicial district has already handled through trial another similar action between Tiara and its public insurance adjuster and, in doing so, resolved a number of identical issues under Florida law. The Southern District of Florida's familiarity with the general background and applicable law will save the Court and the parties a great deal of time and expense. Finally, transfer promotes judicial efficiency because the average time from filing to trial is more than 9 months longer in the Southern District of New York than the Southern District of Florida.

For all these reasons, the balance of convenience and interest of justice strongly favors transferring this case to the Southern District of Florida.

## BACKGROUND

Tiara is a non-profit condominium association that operates and maintains the Tiara Condominium, a 42-story, 320-unit luxury beach front condominium located on Singer Island in Palm Beach County, Florida. (Compl. ¶¶ 1, 8.) Tiara is incorporated under the laws of Florida and maintains its principal place of business in Rivera Beach, Florida. (*Id.* ¶ 1.) Tiara has not engaged in "systematic and regular business activities" in New York. (*Id.*)

Without question, the center of gravity of this case is in Florida. (*See* Declaration of Brian V. Fitzsimmons ("Fitzsimmons Decl.") ¶¶ 3-16.) Marsh USA was retained by Tiara to serve as its insurance broker for various lines of insurance coverage. (*Id.* ¶ 5.) (*See also* Compl. ¶¶ 9-11.) The placement of insurance for Tiara was the responsibility of the Sunrise, Florida

4089940.1

office of Marsh USA. (Fitzsimmons Decl. ¶ 5.) The Marsh brokers who were involved with the placement of insurance for Tiara worked in the Sunrise, Florida office. (*Id.*) At the direction of Tiara, the Marsh USA office in Florida placed a "Commercial Wind Only Policy" with Citizens Property Insurance Corporation ("Citizens"). (*Id.* ¶ 6.) (*See also* Compl. ¶¶ 12-14.) Citizens is a Florida-based insurance company that offers wind storm insurance coverage to Florida residents who are without private insurance options. (Fitzsimmons Decl. ¶ 7.) Citizens maintains offices in Tallahassee and Jacksonville. (*Id.*)

All of the insurance placement activities relating to the policy at issue here took place in the State of Florida. (*Id.* ¶ 8.) The Marsh USA office in Florida placed the policy on behalf of Tiara. (*Id.*) The meetings and other communications between representatives of Marsh USA and Tiara concerning the placement of the policy at issue occurred in Florida. (*Id.* ¶¶ 8-9.) The policy was negotiated between Marsh and Citizens in Florida. (*Id.*) The policy was underwritten and issued by Citizens in Florida. (*Id.*) Tiara purchased the policy in Florida and the policy was delivered to Tiara in Florida. (*Id.*) (*See also* Compl. ¶ 6 ("TIARA purchased an insurance policy through Defendants in the State of Florida for property located in Florida.") Finally, the insurance premiums due under the policy were paid by Tiara to Citizens in Florida. (Fitzsimmons Decl. ¶ 8.)

On or about September 4, 2004, Hurricane Frances caused property damage to the Tiara condominium project in Florida. (Compl. ¶ 16.) A few weeks later, on or about September 25, 2004, Hurricane Jeanne purportedly caused additional damage to the condominium project. (*Id.* ¶ 17.) After the hurricanes, Tiara began to remediate its losses, including drying out the building, as directed by Citizens. (*Id.* ¶¶ 19, 23, 46.) Despite being advised by "other professionals" that the drying out process was ineffective, Tiara continued in those efforts

because it believed it had two insurance policy limits. (*Id.*) In or about November or December 2004, Tiara alleges it became concerned that its total damages would exceed the single occurrence policy limit and, as a result, Tiara asked Marsh whether two policy limits would be available, assuming the two hurricanes were considered separate occurrences. (*Id.* ¶ 20.) In January 2005, Tiara claims that Marsh "assured" it that two policy limits were available under the policy and, based on that assurance, Tiara proceeded with the remediation efforts, including the concededly "largely ineffective" drying process. (*Id.*)

On or about July 28, 2005, Citizens allegedly advised Tiara that two policy limits were not available under the policy. (Compl. ¶¶ 21-22.) Tiara further alleges that it had instructed Marsh to purchase per occurrence limits of almost $50 million. (*Id.* ¶ 22.) As a result of Marsh's purported acts or omissions, Tiara contends it did not have sufficient insurance proceeds to repair the damage to the condominium project. (*Id.* ¶ 24.) However, Tiara has received millions of dollars in insurance proceeds from Citizens. In fact, the Complaint alleges that Citizens paid Tiara almost $50 million dollars under the policy before Tiara received even more money from Citizens as part of the settlement of its lawsuit against Citizens over a second $50 million dollar policy limit. (*Id.* ¶¶ 21-22, 30, 41, 50.) Thus, according to the Complaint, Tiara already has received more than $50 million in insurance proceeds for its losses.

The Complaint asserts a negligence claim and two fraud counts. (*Id.* ¶¶ 25-50.) Tiara seeks to recover compensatory damages, interest, and attorneys' fees and costs. (*Id.* ¶¶ 30, 41, 50.)

# ARGUMENT

## I. RELEVANT LEGAL STANDARD FOR TRANSFER MOTIONS

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of the statute is to "prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The statute affords the district court broad discretion to adjudicate motions to transfer venue "according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("Motions for transfer lie within the broad discretion of the district court"). The party moving to transfer bears the burden of establishing that: (i) the action is one that "could have been brought" in the proposed transferee forum; and (ii) the transfer promotes the convenience of the parties, witnesses and justice. *See Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.*, 2006 U.S. Dist. LEXIS 34460, at *4-5 (S.D.N.Y. May 31, 2006) (Baer, J.); *Fuji Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006).

## II. THIS ACTION "MIGHT HAVE BEEN BROUGHT" IN THE UNITES STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA.

Under Section 1404(a), an action might have been brought in another forum "if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) (citation omitted). In the present case, the Southern District of Florida has subject matter jurisdiction over this action because there is diversity of citizenship between the

4089940.1

parties and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1-5.) The Southern District of Florida also has personal jurisdiction over Marsh USA Inc. because it provided insurance brokerage services to Tiara in Florida through its office in the state and the alleged tortious acts occurred there. *See* §48.193(1)(a)-(b), Fla. Statutes (2007); (Fitzsimmons Decl. ¶¶ 5, 8). Finally, venue is proper in the Southern District of Florida because, as demonstrated below, a substantial part of the events giving rise to the claim occurred there. 28 U.S.C. § 1391(a)(2); (Compl. ¶¶ 1, 6, 8-14, 16-24); (Fitzsimmons Decl. ¶¶ 5-10.) Under these circumstances, there can be no reasonable dispute that this action originally might have been brought in the Southern District of Florida.

### III. THE BALANCE OF CONVENIENCE AND THE INTEREST OF JUSTICE STRONGLY WEIGHS IN FAVOR OF TRANSFERRING THIS CASE TO THE SOUTHERN DISTRICT OF FLORIDA.

"When evaluating a motion to transfer, a court should consider the following factors: (1) the convenience of the witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of the relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances." *Elec. Workers Pension Fund, Local 103, v. Nuvelo, Inc.*, 2007 U.S. Dist. LEXIS 52246, *10 (S.D.N.Y. July 17, 2007) (Baer, J.). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). "Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." *Id.* (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)). As demonstrated below, the balancing of

4089940.1

these relevant factors overwhelmingly favors transferring this case to the Southern District of Florida.

### A.  Convenience of the Witnesses.

"'The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue.'" *Montgomery v. TAP Enter., Inc.*, 2007 U.S. Dist. LEXIS 12702, *11 (S.D.N.Y. 2007) (Baer, J.) (quoting *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004). The proper balancing of this factor takes into consideration the materiality of each witness' testimony. *See Electrical Workers*, 2007 U.S. Dist. LEXIS 52246, at *14-15 ("'[I]t is the nature of the testimony and not the number of prospective witnesses on each side that is important.'") (Baer, J.); *Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.*, 2005 WL 3367044 (S.D.N.Y. Dec. 12, 2005).

All of the Marsh witnesses knowledgeable about the negotiation, procurement and issuance of the Policy live in Florida. (Fitzsimmons Decl. ¶ 12A-C.) During the relevant time period, Neil A. Hewitt held the title of Senior Vice President and served as the Client Executive on the Tiara account. (*Id.* ¶ 12A.) Mr. Hewitt resides in Florida. (*Id.*) As Client Executive, Mr. Hewitt was primarily responsible for handling the Tiara account. (*Id.*) Mr. Hewitt has knowledge regarding the placement of the policy, including the per occurrence limits under the policy. (*Id.*) In addition, Mr. Hewitt is the author of a letter to Tiara concerning the per occurrence limits under the policy and, as such, has information about the statements made in that letter. (*Id.*) This letter was attached to the Complaint in support of Tiara's fraud allegations. (Compl. ¶ 44; Ex. 1.) Mr. Hewitt no longer works for Marsh. (Fitzsimmons Decl. ¶ 12A.) Similarly, Stacey Diana, a former Marsh employee and Florida resident, has knowledge

concerning the negotiation, procurement and issuance of the policy, including the per occurrence limits under the policy. (*Id.* ¶ 12B.) Another Marsh witness who resides in Florida is Rosalia A. Croes. Ms. Croes was the Marsh Client Representative on the Tiara account. (*Id.* ¶ 12C.) In that role, Ms. Croes was involved in the placement of the policy. She has knowledge concerning the negotiation, procurement and issuance of the Policy, including the per occurrence limits under the policy. (*Id.*) No material Marsh witnesses are located in New York. (*Id.* ¶ 13.)

The Southern District of Florida also is more convenient for the non-party witnesses. *See Royal Ins. Co. of Am. v. Tower Records, Inc.*, 2002 WL 31385815, at *5 (S.D.N.Y. Oct. 22, 2002) ("Generally, convenience of a non-party witnes is given greater weight than a party witness."). Citizens, a Florida resident, underwrote the policy and adjusted the claim in Florida. (Fitzsimmons Decl. ¶¶ 7, 8, 10.) During the relevant time period, Diana Carr worked for Citizens and may have knowledge concerning the underwriting of the policy. (*Id.* ¶ 14A.) One of the issues in this case is the per occurrence limits under the policy. Ms. Carr should have knowledge on that issue. Based upon information and belief, Ms. Carr resides in Florida. (*Id.*) In addition, Joe Clark was the Large Loss Examiner at Citizens responsible for investigating, handling and adjusting the property damage claim submitted by Tiara. (*Id.* ¶ 14B.) Mr. Clark has relevant knowledge about the per occurrence limits under the policy. Based upon information and belief, Mr. Clark resides in Florida. (*Id.*)

Another non-party witness is Thomas Habinck of York Claims Service, Inc. Mr. Habinck was appointed by Citizens as its adjuster in connection with the property damage claim submitted by Tiara. (Fitzsimmons Decl. ¶ 15A.) Mr. Habinck has knowledge about the handling and adjusting of the property damage claim under the policy. (*Id.*) Mr. Habinck should also have knowledge about the positions taken by Citizens concerning the limits of liability available

under the policy. (*Id.*) Based upon information and belief, Mr. Habinck resides in North Carolina, not New York. (*Id.*)

Southern Construction Services, Inc. ("Southern Construction") was retained by Tiara to repair the damage caused by Hurricane Frances and Hurricane Jeanne. (Fitzsimmons Decl. ¶ 16A.) Domingo Castro is the President of Southern Construction. (*Id.*) Mr. Castro has knowledge about the nature and extent of repairs undertaken at Tiara and the drying out remediation efforts described in the Complaint. (*Id.*) In the Complaint, Tiara alleges that it relied upon Marsh's purported statements in deciding to continue with the drying out process, even after being advised by "other professionals [] that the drying attempts had become ineffective." (Compl. ¶¶ 19, 38, 46.) Mr. Castro should offer testimony concerning such advice. This testimony will show that Tiara could not have reasonably relied on any statements made by Marsh, an insurance broker, in deciding to continue the drying out process. Based upon information and belief, Southern Construction is located in West Palm Beach, Florida 33408 and Mr. Castro resides in Florida. (Fitzsimmons Decl. ¶ 16A)

In sum, because all of these material witnesses are located in Florida or very near Florida, the Southern District of Florida is a more convenient forum.

**B.      Availability of Process.**

This factor weighs in favor of transfer because many of the prospective witnesses will be subject to the subpoena power of the Southern District of Florida. However, if this action remains in this judicial district, compulsory process will not be available to compel the key witnesses to appear in New York. *Montgomery*, 2007 U.S. Dist. LEXIS 12702, at *12 (Baer, J.); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947) ("Certainly to fix the place of trial at

a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.").

### C. Convenience of the Parties.

Transferring this case promotes the convenience of both parties. The Marsh USA office that placed the policy is located in the Southern District of Florida. (Fitzsimmons Decl. ¶¶ 5, 8.) Likewise, Tiara's principal place of business is in the Southern District of Florida. (Compl. ¶ 8; see also id. ¶ 1 ("TIARA does not engage in systematic and regular business activities in New York.").) Finally, as discussed above, most of the material witnesses reside in Florida. Therefore, this factor strongly weighs in favor of transfer.

### D. Locus of the Operative Facts

The locus of operative facts is an "important factor to be considered in deciding where a case should be tried." *800-Flowers, Inc. v. Intercontinental Flowers, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1992). "Where there is no material connection between the district and the operative facts . . . the interests of justice require transfer of [the] action." *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005). In determining the locus of operative facts, the court "must look to the site of events from which the claim arises." *Transatlantic Reinsurance Co. v. Continental Ins. Co.*, 2003 U.S. Dist. LEXIS 20933, *14 (S.D.N.Y. 2003) (quoting *Royal Ins. Co.*, 2002 WL 31385815 at *3).

In the present case, the locus of operative facts centers on Florida. The policy at issue was negotiated, procured, and issued in Florida. (*See* Fitzsimmons Decl. ¶¶ 5-9.) Marsh USA's office in Florida placed the policy for Tiara. (*Id.* ¶¶ 5, 8.) The policy was underwritten by a Florida insurance company. (*Id.* ¶¶ 6-8.) The policy covered a condominium project located in that state and the property damage took place there. (Compl. ¶¶ 1; 16-17.) The alleged

4089940.1

negligence and fraud purportedly occurred in Florida and caused injury in Florida. (Compl. ¶¶ 6, 44; Ex. 1.) Finally, the key witnesses and relevant documents are located in Florida. This factor weighs strongly in favor of transfer.

E.  **Location of Relevant Documents.**

Both Tiara and Marsh are located in Florida. All of the Marsh documents relating to the placement of the policy and the claim are located in Florida. (Fitzsimmons Decl. ¶ 11.) Likewise, the relevant Tiara documents should be in Florida. In addition, relevant documents maintained by Citizens, a non-party, concerning the underwriting of the policy and the handling of the claim should be in Florida.

F.  **The Relative Means of the Parties.**

This factor is neutral because the parties have sufficient means to litigate this case in either Florida or New York. *See, e.g., Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, 2000 U.S. Dist. LEXIS 13138, at * 23 (S.D.N.Y. Sept. 13, 2000) (relative means of the parties is given little weight where both parties are corporations). However, transferring this case to Florida will reduce the costs of litigation for both Tiara and Marsh because almost all of the material witnesses reside there and the other significant evidence is located there as well.

G.  **Familiarity of Each District with the Governing Law.**

In a motion to transfer venue under Section 1404(a), the court must apply the choice of law rules of the transferor court in determining which state's substantive law will apply in a diversity action. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990). Because this case was brought in the Southern District of New York, New York choice of law rules apply for the purpose of determining which state's law governs Tiara's fraud and negligence claims.

4089940.1

New York law requires courts to employ the "interest analysis" approach to determine which state's law governs a tort claim. *Abdelhamid v. Altria Group, Inc.*, 2007 U.S. Dist. LEXIS 33938, at *2 (S.D.N.Y. May 8, 2007); *Rosenberg v. Pillsbury Co., et al.*, 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989). Under the "interest analysis" approach, the law of the jurisdiction having the greatest interest in the litigation will be applied to the dispute. *Id.* Under this approach, the "[s]ignificant facts or contacts consist of, almost exclusively, the parties' domiciles and the locus of the tort." *Id. at 3*. Indeed, "in applying New York's choice of law rules, federal district courts have continued to emphasize the locus of the tort in determining which state's law applies." *Rosenberg*, 718 F. Supp. at 1150 (citations omitted.) In the present case, the locus of the alleged torts is unquestionably Florida.

Under New York law, the locus of the tort is the place where the alleged injury was inflicted. *See La Luna Enter., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 n.2 (S.D.N.Y. 1999) ("The locus of a tort is generally determined by the place where the plaintiff suffered injury.") (citation omitted). *See also Rosenberg*, 718 F. Supp. at 1150 (locus of a fraud is "'the place where the injury was inflicted.'"); *Abdelhamid*, 2007 U.S. Dist. LEXIS, at *4 (locus of negligence is where tort occurred and caused injury). In this case, Florida is the place where Tiara alleges it incurred "significantly higher remediation costs," "prematurely settle[d] its dispute with Citizens" and lacked sufficient insurance proceeds to "completely repair" the condominium. (Compl. ¶¶ 24, 41, 50.) Moreover, the course of dealing and conduct regarding the placement of the policy occurred in Florida, and the alleged misrepresentations were directed towards Tiara, a Florida citizen, in Florida. (Compl. ¶ 6 ("This matter involves a transaction whereby TIARA purchased an insurance policy through Defendants in the State of Florida for property located in Florida"); *see also* ¶¶ 25-30.) Accordingly, Florida law should apply to the

tort claims asserted against Marsh. As a result, this factor weighs in favor of transferring this case to the Southern District of Florida. *See, e.g. Ferens*, 494 U.S. at 530 (holding that federal courts favor adjudication of diversity actions by a federal court that sits in the state whose substantive law will govern the case).

### H. Plaintiff's Choice of Forum.

Although the plaintiff's choice of forum is generally given "'substantial weight,' this presumption applies with less force where the plaintiff chooses a foreign forum and the cause of action bears little relation to the chosen forum." *Montgomery*, 2007 U.S. Dist. LEXIS 12702, *15; *Fuji*, 415 F. Supp. 2d at 376. That is the case here. The Southern District of New York is not Tiara's home state. Tiara is a Florida corporation with its principal place of business in Florida. (Compl. ¶ 1.) The operative facts giving rise to Tiara's claims did not take place in the Southern District of New York and none of the material witnesses reside in this judicial district. *See Arrow Elecs. Inc. v. Ducommum, Inc.*, 724 F. Supp. 264, 265 (S.D.N.Y. 1989) (where the facts of the action bear little connection to the chosen forum, "plaintiff's choice [is] given reduced significance.") Tiara's choice of forum is further diminished because Marsh seeks to transfer this case back to plaintiff's home forum in Florida. *Montgomery*, 2007 U.S. Dist. LEXIS 12702, *15 ("'The deference owed to plaintiffs' choice of forum is further diminished where transfer is sought to the forum where plaintiffs reside.'").

### I. Judicial Economy and Interest of Justice.

The Court's consideration of this factor is "based on the totality of the circumstances" and "relates primarily to issues of judicial economy." *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l*, 245 F. Supp. 2d 523, 527 (S.D.N.Y. 2003). Here, transferring this case promotes this important objective.

4089940.1

The interests of judicial economy and efficiency are promoted because the Southern District of Florida has already litigated similar legal issues in an action between Tiara and its public insurance adjuster arising out of the same hurricane damage at issue here. For example, in that case, the Southern District of Florida applied Florida's economic loss rule to bar a negligence claim. (Conway Decl. ¶ 4; Ex. B.). Here, Marsh has moved to dismiss the Complaint on that very ground. Similarly, because Judge Hurley has already handled the public adjuster case through trial, he is familiar with all the facts and circumstances of the loss and Tiara's attempts to remediate the damage, including the involvement of Citizens, Tiara's insurer. It would be a misuse of judicial resources for this Court to become familiar with the same law, facts and circumstances already considered by another federal court.

Finally, a trial in Florida will be more expeditious than a trial in New York. *See Indian Harbor,* 419 F. Supp 2d at 407 ("'Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight.'") (quoting *Miller v. Bombardier Inc.*, No. 93 Civ. 0376, 1993 WL 378585, at *5 (S.D.N.Y. 1993). Indeed, the average time from filing to trial is 25.7 months in the Southern District of New York, as compared to 16.3 months in the Southern District of Florida. (*See* Conway Decl. ¶ 6; Ex. D.) This is a significant difference that weighs in favor of transfer.

## CONCLUSION

For all of the foregoing reasons, Marsh respectfully requests that the Court transfer venue to the Southern District of Florida and grant such further relief as the Court deems appropriate under the circumstances.

4089940.1

Dated: January 14, 2007.                    Respectfully submitted,

                                            s/Mitchell J. Auslander
                                            Mitchell J. Auslander (MA-1224)
                                            mauslander@willkie.com
                                            Gregory Conway
                                            gconway@willkie.com
                                            WILLKIE FARR & GALLAGHER LLP
                                            787 Seventh Avenue
                                            New York, NY 10019
                                            Telephone: (212) 728-8000
                                            Facsimile: (212) 728-8111

                                            *Attorneys for Marsh & McLennan Companies, Inc., Marsh Inc. and Marsh USA Inc.*