Mitchell J. Auslander (MA 1224)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8201

*Attorneys for the Marsh Defendants*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
TIARA CONDOMINIUM ASSOCIATION,
INC.                                                        :

                Plaintiff,      :          CASE NO. 07-CIV-9392

             - against -            :          Judge Harold Baer, Jr.

MARSH & MCLENNAN COS., INC., *et al.*,  :          ELECTRONICALLY FILED

                Defendants.     :

------------------------------------------------------------x

## MARSH DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF TIARA CONDOMINIUM ASSOCIATION, INC.'S COMPLAINT

COME NOW Defendants Marsh & McLennan Companies, Inc., Marsh Inc. and Marsh USA Inc. (collectively, "Defendants"), and state the following for their Answer and Affirmative Defenses to Plaintiff's Complaint:

### PARTIES, VENUE AND JURISDICTION

1.    TIARA is a not for profit Florida corporation, organized and conducting business in Palm Beach County, Florida, with its principal place of business located at Tiara Circle, Riviera Beach, Florida 33404. TIARA does not engage in systematic and regular business activities in New York.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

2.       Upon information and belief, Marsh & McLennan Companies, Inc. ("MMC") is a holding company organized under the laws of the State of Delaware, which maintains its headquarters in New York. Upon information and belief, MMC is the parent company of various subsidiaries and affiliates that provide clients with, among other things, advice and assistance in the procurement of insurance, acting as broker, agent or consultant for insureds.  MMC holds itself out as an expert in the analysis and placement of insurance coverage.

ANSWER: Defendants admit that Marsh & McLennan Companies, Inc. is a Delaware corporation with its principal place of business at 1166 Avenue of the Americas, New York, New York 10036. Defendants further admit that Marsh & McLennan Companies, Inc. is the parent company of Marsh Inc. and Marsh USA Inc. Defendants deny the remaining allegations and legal conclusions contained in this paragraph of Plaintiff's Complaint.

3.       Upon information and belief, Defendant Marsh, Inc. is a corporation organized under the laws of the State of Delaware, and is a wholly owned subsidiary of MMC that maintains a business office in New York, New York. Marsh, Inc. is the parent company to Defendant Marsh USA, Inc.

ANSWER: Defendants admit that Marsh Inc. is a Delaware corporation with its principal place of business at 1166 Avenue of the Americas, New York, New York 10036. Defendants further admit that Marsh USA Inc. is wholly owned by Marsh Inc.

4.       Upon information and belief, Defendant Marsh USA, Inc. ("Marsh USA) is an insurance services company organized under the laws of the State of Delaware that is licensed to do business in the State of New York and maintains a business office in New York, New York. Marsh USA is an insurance broker that designs and implements insurance programs and negotiates with insurance companies to purportedly obtain the most suitable coverage at the lowest price for its clients.

ANSWER: Defendants admit that Marsh USA Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 1166 Avenue of the Americas, New York, New York 10036. Defendants further admit that during the relevant time

period Marsh USA Inc. was licensed to conduct business within the State of New York. Defendants further admit that Marsh USA Inc. is an insurance broker that provides various risk and insurance-related services to its clients, including the placement of insurance policies. Defendants further admit Marsh USA Inc. maintains various offices across the country, including offices in the State of Florida.

5. There is complete diversity of citizenship between the litigants, and the amount in controversy in this action exceeds $75,000.00 exclusive of interest and costs. Accordingly, this Court has subject matter jurisdiction pursuant to 28 USC Sec. 1332.

ANSWER: Defendants admit that there is complete diversity between the parties and the amount in controversy allegedly exceeds $75,000 exclusive of interest and costs.

6. This matter involves a transaction whereby TIARA purchased an insurance policy through Defendants in the State of Florida for property located in Florida.

ANSWER: Defendants admit that Tiara purchased a "Commercial Wind Only" insurance policy from a Florida-based insurance carrier to cover property located in the State of Florida. Defendants further admit that this insurance policy was placed on behalf of Tiara and at its direction by the Marsh USA Inc. office located at 1560 Sawgrass Corporate Parkway, Sunrise, Florida ("Marsh USA Florida"). Defendants deny the remaining allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

7. Venue is proper in this Court in that Defendant MMC maintains its principal place of business in New York, New York, and Defendants Marsh, Inc. and Marsh USA, Inc. maintain business offices in New York, New York.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

## STATEMENT OF FACTS

8. TIARA is authorized by Section 718.111(3) of the Florida Condominium Act, and by the Declaration, Articles of Incorporation, and Association Bylaws, (hereinafter collectively referred to as the "Condominium Documents") to bring this action on its own behalf

and on behalf of the co-owners comprising The Tiara Condominium (the "Condominium Project"), located in Palm Beach County, Florida.

ANSWER: Defendants admit that the Tiara Condominium building is located in Palm Beach County, Florida. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

9. TIARA retained MARSH to procure quotes for a number of insurance policies pertaining to the Condominium Project and TIARA'S business operations (comprised of the management and administration of the Condominium Project).

ANSWER: Defendants admit that Tiara retained Marsh USA Florida to serve as it insurance broker. Defendants further admit that Marsh USA Florida placed certain insurance policies for Tiara based on Tiara's instruction and direction.

10. In April, 2004, MARSH proposed and recommended to TIARA that TIARA purchase several insurance policies, including but not limited to, a policy for wind damage insurance.

ANSWER: Defendants admit that Marsh USA Florida obtained insurance quotes from certain insurance carriers for certain lines of insurance at the direction of Tiara and presented that information to Tiara for its consideration. Defendants deny the remaining allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

11. MARSH advised TIARA regarding the insurable value of the Condominium Project and the specific policy limits that should be purchased by TIARA, all of which was contained in its "Insurance Proposal for Tiara Condominium Association, Inc." dated April 8, 2004.

ANSWER: Defendants admit that Tiara provided information to Marsh USA Florida concerning the amount of insurable values and Tiara decided what limits of insurance to purchase. Defendants further state that the document speaks for itself. Defendants deny the remaining allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

12. In particular, MARSH recommended and advised that TIARA purchase a wind damage insurance policy from Citizens Property Insurance Corporation ("CITIZENS") with a per-occurrence limit of $49,970,530 wherein losses from separate instances would be covered up to that amount.

ANSWER: Defendants admit that, at the direction and instruction of Tiara, Marsh USA Florida placed a "Commercial Wind Only" insurance policy with Citizens Property Insurance Corporation with the per occurrence limits requested by Tiara. Defendants deny the remaining allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

13. TIARA accepted MARSH'S recommendation and advice and instructed MARSH to procure a wind damage policy with a per-occurrence limit of $49,970,530, wherein losses from separate instances would be covered up to that amount.

ANSWER: Defendants admit that, at the direction and instruction of Tiara, Marsh USA Florida placed a "Commercial Wind Only" insurance policy with Citizens Property Insurance Corporation with the per occurrence limits requested by Tiara. Defendants deny the remaining allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

14. In consideration of the premium paid to it by TIARA, CITIZENS issued to TIARA, a "Commercial - Residential Wind Only Policy" Policy No. 1308219 ("The Wind Damage Policy").

ANSWER: Defendants admit that Citizens Property Insurance Corporation issued a "Commercial Wind Only" insurance policy to Tiara, subject to its terms and conditions.

15. TIARA expected that hurricane and/or windstorm damages, and ensuing damages as a direct result thereof, would be covered perils under the Wind Damage Policy.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

16. On or about September 4, 2004, Hurricane Frances struck South Florida and caused extensive damage to the Condominium Project, including damage to the interior of the building and the condominium units.

1449015.2

ANSWER: Defendants admit that Hurricane Frances impacted the State of Florida on or about September 4, 2004. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

17. Following the damage to the Condominium Project caused by Hurricane Frances described above, Hurricane Jeanne struck South Florida shortly thereafter on or about September 25, 2004, causing further damage to the Condominium Project.

ANSWER: Defendants admit that Hurricane Jeanne impacted the State of Florida on or about September 25, 2004. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

18. Following both hurricanes, prompt and proper notice was given to CITIZENS by TIARA.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

19. Following both hurricanes, TIARA immediately undertook to remediate its losses, including taking appropriate temporary and permanent repairs, retaining design professionals and contractors and otherwise properly mitigating its damages. Specifically, TIARA began attempts to dry out the building as directed by CITIZENS and continued those efforts at a cost of over $100,000.00 per day, even after other professionals advised that the drying attempts had become ineffective, based on its belief that CITIZENS would pay out the two policy limits thereby providing sufficient insurance proceeds to pay for both the excessive dry-out efforts and the balance of the reconstruction costs.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

20. In or about November and December 2004, it became clear that the total damages incurred by TIARA would likely exceed the single occurrence limit of the Wind Damage Policy which caused TIARA to seek the advice of MARSH as to whether, assuming the two hurricanes

represented separate occurrences, the policy reinstated after the damage, making two policy limits available to TIARA. MARSH assured TIARA in writing in January, 2005 that the policy did reinstate, meaning that TIARA did have two policy limits, or nearly $100,000,000, available to it under the Wind Damage Policy with which to remediate its losses. Accordingly, TIARA proceeded with the remediation, including the largely ineffective drying efforts, in reliance on MARSH'S assurances.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

21. Once partial payments by CITIZENS under the Wind Damage Policy approached one policy limit (i.e., $49,970,530), CITIZENS informed TIARA that two policy limits were not available under the policy. On or about July 28, 2005, CITIZENS made a last partial payment, which CITIZENS explained represented the "balance of the limit of this policy."

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

22. In denying any further payment to TIARA, CITIZENS, through its counsel, stated that TIARA was only entitled to recover one policy limit under the Wind Damage Policy for the two occurrences. CITIZENS further explained that two policy limits were not available under the Wind Damage Policy for the two separate losses because the policy did not contain the per-occurrence limit of $49,970,530 that MARSH had been instructed to purchase for TIARA.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

23. Once CITIZENS refused to pay a second policy limit for the second hurricane, TIARA ceased the CITIZENS-directed drying program and entered into a lump sum contract to remove all of the interiors of the building so that the reconstruction could commence.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

24. As a result of MARSH'S actions and/or omissions, TIARA ultimately did not receive sufficient insurance proceeds to fully or otherwise substantially reconstruct and restore the Condominium Project.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

## COUNT I

## **NEGLIGENCE**

25. TIARA incorporates by reference the allegations contained above as if fully restated herein.

ANSWER: Defendants adopt and reallege their responses to paragraphs 1 through 24 as and for their response to this paragraph of Plaintiff's Complaint.

26. TIARA reasonably relied on MARSH to purchase an appropriate wind damage insurance policy based on MARSH'S recommendation that the policy contain a per-occurrence limit of $49,970,530 for the Condominium Project.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

27. MARSH owed a duty to TIARA to exercise the degree of care consistent with the greater knowledge and skill possessed by an insurance broker. TIARA had the right to rely upon MARSH as a competent insurance broker, and in fact did rely upon MARSH to its detriment as alleged herein.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

28. In addition, MARSH'S duties to TIARA included, but were not limited to, the duty to exercise the reasonable skill and care to obtain the appropriate and sufficient insurance coverage to enable TIARA to fully repair and restore the Condominium Project to the condition existing before the hurricane damage, the duty to properly advise TIARA in regard to the terms of the insurance policy as they relate to coverage, and the duty to take such other actions consistent with the greater degree of knowledge and skill possessed by insurance brokers.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

29. MARSH breached its legal duties to TIARA by its actions and/or omissions, including, but not limited to, the following:

    a. Breaching its fiduciary or other obligations to TIARA;

  b. Exposing TIARA to unnecessary additional damages;

  c. Failing to procure proper insurance coverage;

  d. Failing to advise TIARA of its failure to obtain proper coverage under the Wind Damage Policy, such that TIARA would be able to receive sufficient insurance benefits to repair and restore the Condominium Project to the condition existing before the hurricane damage;

  e. Failing to advise TIARA that the Wind Damage Policy obtained did not contain the coverage desired by TIARA;

  f. Failing to adequately explain the scope of coverage involved in the Wind Damage Policy;

  g. Failing to explain the scope of the highly complex insurance coverage in writing;

  h. Failing to advise TIARA that the Wind Damage Policy obtained did not contain what is known as a "reset clause", the absence of which could leave, or could otherwise be construed to leave, TIARA without the full amount of the requested coverage;

  i. Failing to explain the terms and scope of the Wind Damage Policy in a manner that was adequate to enable TIARA to be fully informed of and understand the limitations or exceptions;

  j. Failing to properly advise and make proper recommendations to TIARA and/or otherwise making false representations to TIARA insofar as MARSH advised TIARA that the policy limit was reinstated after an occurrence when in fact Florida law required that a "reset clause" be included in the policy before more than one policy limit would be available;

  k. Failing to obtain a prompt commitment and/or verification from CITIZENS as to the total amount of insurance benefits available to TIARA under the Wind Damage Policy as the result of the damage caused by the two hurricanes;

  l. Failing to properly advise and recommend to TIARA that it should obtain a prompt commitment and/or verification from CITIZENS as to the total amount of insurance benefits available to TIARA under the Wind Damage Policy as the result of the damage caused by the two hurricanes.

  ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph (including all subparagraphs) of Plaintiff's Complaint.

30. As a direct and proximate result of MARSH'S negligence, TIARA and its members have suffered, and will continue to suffer, damages by way of the incurrence of significantly higher remediation costs, including millions of dollars of unnecessary drying expenses which would had been avoided had TIARA known that CITIZENS would be able to avail itself of significant defenses to the payment of a second policy limit. TIARA was further damaged in that it was forced to prematurely settle its dispute with CITIZENS as to the availability of a second policy limit under duress and for less than it was entitled and TIARA incurred significant attorney fees in connection with that litigation. TIARA has also incurred additional direct and consequential damages due to its inability to completely repair the building because of the lack of sufficient insurance proceeds.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

WHEREFORE, Tiara Condominium Association, Inc. demands judgment in its favor against MARSH in an amount in excess of $75,000.00 to compensate TIARA for all of its direct, consequential, and liquidated damages, plus interest, costs and attorneys' fees, together with such other relief as this Court deems just and equitable under the circumstances.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

## COUNT II

### FRAUD/MISREPRESENTATION

31. TIARA incorporates by reference the allegations contained above as if fully restated herein.

ANSWER: Defendants adopt and reallege their responses to paragraphs 1 through 30 as and for their response to this paragraph of Plaintiff's Complaint.

32. TIARA reasonably relied on MARSH to procure an appropriate wind damage policy that would meet its requirements.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph of Plaintiff's Complaint and, as such, they are denied.

33. MARSH intentionally made material false representations to TIARA concerning the coverage and terms of the Wind Damage Policy in that MARSH represented to TIARA that

the Wind Damage Policy had a per-occurrence limit of $49,970,530 wherein losses from separate instances would each be covered up to that amount.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

34. Alternatively, MARSH made the representations believing them to be true, but they were, in fact, false. MARSH was negligent in making the representations because it should have known that the statements were false.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

35. MARSH'S representations, as described above, were material to the transaction with CITIZENS and TIARA relied upon and was induced into procuring the insurance policy with CITIZENS on the basis of such representations.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

36. MARSH later specifically represented to TIARA, in response to an inquiry from TIARA, that the per-occurrence limit under the Wind Damage Policy is reinstated.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

37. MARSH knew or should have known, however, that the Wind Damage Policy did not contain a "reset clause" which would have assured that a second limit would be available for a second occurrence during the same policy year.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

38. MARSH made the representations with the intent that TIARA rely upon them, and TIARA did, in fact, reasonably rely upon them to its detriment. Specifically, TIARA relied upon the representations when it decided to continue with the dry out process, believing that approximately $100,000,000.00 in insurance coverage would be available since MARSH represented that the per occurrence limit is reinstated under the Wind Damage Policy that MARSH had procured for TIARA.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

39.  MARSH made the representations intentionally or recklessly, with disregard for their truth or falsity.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

40.  The representations were false when they were made.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

41.  As a foreseeable consequence of MARSH'S misrepresentations, TIARA has suffered damages flowing from the massive financial losses it sustained, and continues to sustain, as a result of the hurricane damage and the inability to receive two policy limits under the Wind Damage Policy. Specifically, TIARA has suffered significantly higher remediation costs by way of millions of dollars of unnecessary drying expenses which would had been avoided had TIARA known that CITIZENS would be able to avail itself of significant defenses to the payment of a second policy limit. TIARA was further damaged in that it was forced to prematurely settle its dispute with CITIZENS as to the availability of a second policy limit under duress and for less than it was entitled and TIARA incurred significant attorney fees in connection with that litigation. TIARA has also incurred additional direct and consequential damages due to its inability to completely repair the building due to the lack of insurance proceeds.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

WHEREFORE, Tiara Condominium Association, Inc. demands a Judgment in its favor against MARSH in an amount in excess of $75,000.00 to compensate TIARA for all of its direct, consequential, and liquidated damages, plus interest, costs and attorneys' fees, together with such other relief as this Court deems just and equitable under the circumstances.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

## COUNT III

## **FRAUD/MISREPRESENTATION**

42.  TIARA incorporates by reference the allegations contained above as if fully restated herein.

ANSWER: Defendants adopt and reallege their responses to paragraphs 1 through 41 as and for their response to this paragraph of Plaintiff's Complaint.

43.  TIARA relied on MARSH to interpret and explain the terms and conditions of coverage of the Wind Damage Policy.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

44.  In response to a direct inquiry from TIARA, MARSH intentionally made material false representations to TIARA concerning the coverage and terms of the Wind Damage Policy, specifically MARSH represented to TIARA that the Wind Damage Policy had a per-occurrence limit of $49,970,530 wherein losses from separate instances would each be covered up to that amount and that the Wind Damage Policy limit was reinstated (see Exhibit 1).

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint. Defendants further state that the document referenced in this paragraph speaks for itself.

45.  Alternatively, MARSH made the representations believing them to be true, but they were, in fact, false. MARSH was negligent in making the representations because it should have known that the statements were false.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

46.  MARSH'S representations, as described immediately above, were material to decisions made by TIARA in connection with the manner in which it undertook to remediate and reconstruct the damage caused to the Condominium Project, specifically its decision to follow a directive by CITIZENS to continue a very expensive and largely ineffective drying program and to delay a complete 'gutting' of the interior of the building which, in turn, delayed the commencement of the reconstruction of the building.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

47. MARSH made the representations with the intent that TIARA rely upon them, and TIARA did, in fact, reasonably rely upon them to its detriment.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

48. MARSH made the representations intentionally or recklessly, with disregard for their truth or falsity.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

49. The representations were false when they were made.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

50. As a foreseeable consequence of MARSH'S misrepresentations, TIARA has suffered damages flowing from the massive financial losses it sustained, and continues to sustain, as a result of the hurricane damage and the inability to receive two policy limits under the Wind Damage Policy, specifically significantly higher remediation costs by way of millions of dollars of unnecessary drying expenses which would had been avoided had TIARA know that CITIZENS would be able to avail itself of significant defenses to the payment of a second policy limit. TIARA was further damaged in that it was forced to prematurely settle its dispute with CITIZENS as to the availability of a second policy limit under duress and for less than it was entitled and to incur significant attorney fees in connection with that litigation. TIARA has also incurred additional direct and consequential damages due to its inability to completely repair the building due to the lack of insurance proceeds.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

WHEREFORE, Tiara Condominium Association, Inc. demands a Judgment in its favor against MARSH in an amount in excess of $75,000.00 to compensate TIARA for all of its direct, consequential, and liquidated damages, plus interest, costs and attorneys' fees, together with such other relief as this Court deems just and equitable under the circumstances.

ANSWER: Defendants deny the allegations and legal conclusions set forth in this paragraph of Plaintiff's Complaint.

## JURY DEMAND

This paragraph requires no response.

## DEFENDANTS' AFFIRMATIVE DEFENSES

1. For further answer and by way of Defendants' First Affirmative Defense, Defendants state that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2. For further answer and by way of Defendants' Second Affirmative Defense, Defendants state that venue is improper in the United States District Court for the Southern District of New York and this case should be transferred to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a).

3. For further answer and by way of Defendants' Third Affirmative Defense, Defendants state that Plaintiff is barred from recovery by the economic loss rule.

4. For further answer and by way of Defendants' Fourth Affirmative Defense, Defendants state that Plaintiff is barred from recovery based on the doctrine of estoppel.

5. For further answer and by way of Defendants' Fifth Affirmative Defense, Defendants state that Plaintiff is barred from recovery based on the doctrine of waiver.

6. For further answer and by way of Defendants' Sixth Affirmative Defense, Defendants state that Plaintiff is barred from recovery based on the doctrine of laches.

7. For further answer and by way of Defendants' Seventh Affirmative Defense, Defendants state that the alleged conduct complained of in Plaintiff's Complaint is barred by the applicable statutes of limitation or other time-barring doctrines.

8. For further answer and by way of Defendants' Eighth Affirmative Defense, Defendants state that Plaintiff failed to mitigate its damages, if any.

9. For further answer and by way of Defendants' Ninth Affirmative Defense, Defendants state that Plaintiff's damages, if any, were caused by Plaintiff's own contributory negligence and/or the contributory negligence of others over whom Defendants had no control, and not as a result of any conduct of Defendants.

10. For further answer and by way of Defendants' Tenth Affirmative Defense, Defendants state that Plaintiff's Complaint failed to allege facts and/or fraud with sufficient particularity.

11. For further answer and by way of Defendants' Eleventh Affirmative Defense, Defendants state that they intend to rely on any other defense or defenses that may become available or apparent as a result of the development of additional information and hereby reserve the right to amend this Answer and to assert any such defense.

**WHEREFORE**, having fully answered Counts I-III of Plaintiff's Complaint, Defendants respectfully request that this Court dismiss Plaintiff's Complaint with prejudice and at Plaintiff's sole cost and expense. Defendants further respectfully request such other and further relief as this Court deems just and proper under the circumstances.

Dated: January 29, 2008.                    Respectfully submitted,

                                                           s/Mitchell J. Auslander
Mitchell J. Auslander (MA-1224)
mauslander@willkie.com
Gregory Conway
gconway@willkie.com
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Marsh & McLennan Companies, Inc., Marsh Inc. and Marsh USA Inc.*