William E. Brueckner (WB6646)
**ERNSTROM & DRESTE, LLP**
317 Madison Avenue
Suite 703
New York, New York  10017-5201
212.687.0303
*Local Counsel for Plaintiff*

Mark L. McAlpine, *Pro Hac Vice*
Christopher E. Wasson, *Pro Hac Vice*
**McALPINE & ASSOCIATES, P.C.**
3201 University Drive
Suite 100
Auburn Hills, Michigan  48326-2396
248.373.3700
*Lead Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIARA CONDOMINIUM ASSOCIATION, INC., a Florida non-profit corporation, in its own name and as agent for all owners of record of all individual condominium parcels within the Tiara Condominium, | |
| Plaintiff, | CASE NO.   07-CIV-9392 |
| v. | Judge Harold Baer, Jr. |
| MARSH & MCLENNAN COMPANIES, INC., a Delaware corporation, MARSH, INC., and MARSH USA, INC., | ELECTRONICALLY FILED |
| Defendants. | |

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, TIARA CONDOMINIUM ASSOCIATION, INC. ("TIARA"), by and

through the undersigned counsel, states as follows for its Amended Complaint against

Defendants (collectively "MARSH"):

## PARTIES, VENUE AND JURISDICTION

1.     TIARA is a not for profit Florida corporation, organized and conducting business in Palm Beach County, Florida, with its principal place of business located at Tiara Circle, Riviera Beach, Florida 33404.  TIARA does not engage in systematic and regular business activities in New York.  Its activities in this State are limited to the solicitation of business and other activity incidental to its business in interstate and international commerce.

2.     Upon information and belief, Marsh & McLennan Companies, Inc. ("MMC") is a holding company organized under the laws of the State of Delaware, which maintains its headquarters in New York.   Upon information and belief, MMC is the parent company of various subsidiaries and affiliates that provide clients with, among other things, advice and assistance in the procurement of insurance, acting as broker, agent or consultant for insureds.    MMC holds itself out as an expert in the analysis and placement of insurance coverage.

3.     Upon information and belief, Defendant Marsh, Inc. is a corporation organized under the laws of the State of Delaware, and is a wholly owned subsidiary of MMC that maintains a business office in New York, New York.  Marsh, Inc. is the parent company to Defendant Marsh USA, Inc.

4.     Upon information and belief, Defendant Marsh USA, Inc. ("Marsh USA") is an insurance services company organized under the laws of the State of Delaware that is licensed to do business in the State of New York and maintains a business office in New York, New York.  Marsh USA is an insurance broker that designs and implements

2

insurance programs and negotiates with insurance companies to purportedly obtain the most suitable coverage at the lowest price for its clients.

5.     There is complete diversity of citizenship between the litigants, and the amount in controversy in this action exceeds $75,000.00 exclusive of interest and costs. Accordingly, this Court has subject matter jurisdiction pursuant to 28 USC Sec. 1332.

6.     This matter involves a transaction whereby TIARA purchased an insurance policy through Defendants in the State of Florida for property located in Florida.  TIARA had an ongoing relationship with MARSH in which MARSH acted as an insurance advisor, procured insurance policies for TIARA, and provided advice to TIARA in regard to the amounts of insurance coverage to procure, the contents of TIARA's insurance policies and extent of coverage, as well as various matters related to TIARA's rights and obligations under various insurance policies.

7.     Venue is proper in this Court in that Defendant MMC maintains its principal place of business in New York, New York, and Defendants Marsh, Inc. and Marsh USA, Inc. maintain business offices in New York, New York.

## STATEMENT OF FACTS

8.     TIARA is authorized by Section 718.111(3) of the Florida Condominium Act, and by the Declaration, Articles of Incorporation, and Association Bylaws, (hereinafter collectively referred to as the "Condominium Documents") to bring this action on its own behalf and on behalf of the co-owners comprising The Tiara Condominium (the "Condominium Project"), located in Palm Beach County, Florida.

9.     TIARA is managed by an elected Board of Governors, comprised of volunteers, which heavily relies upon the advice of retained professionals in making

business decisions for the condominium association and in administering the common elements of the condominium project.

10.    In this context, TIARA formed and maintained an ongoing relationship with MARSH in which MARSH procured insurance policies for TIARA from time to time and provided advice from time to time to TIARA in regard to the amounts of insurance coverage to procure and in regard to the contents of TIARA's insurance policies, extent of coverage, and TIARA's rights and obligations under those policies.

11.    TIARA formed a relationship with MARSH in large measure because MARSH holds itself out as "the world's leading insurance broker and strategic risk advisor."  MARSH lists one of its "global offices" as being located at 1560 Sawgrass Corporate Parkway in Sunrise, Florida, which is a business address for MARSH USA.

12.    As part of its relationship with MARSH, TIARA retained MARSH to procure quotes for a number of insurance policies pertaining to the Condominium Project and TIARA's business operations (comprised of the management and administration of the Condominium Project).

13.    In April, 2004, MARSH proposed and recommended to TIARA that TIARA purchase several insurance policies, including but not limited to, a policy for wind damage insurance.

14.    MARSH advised TIARA regarding the insurable value of the Condominium Project and the specific policy limits that should be purchased by TIARA, all of which was contained in its "Insurance Proposal for Tiara Condominium Association, Inc." dated April 8, 2004.

15.    In particular, MARSH recommended and advised that TIARA purchase a wind damage insurance policy from Citizens Property Insurance Corporation ("CITIZENS") with a per-occurrence limit of $49,970,530 wherein losses from separate instances would be covered up to that amount.

16.    TIARA accepted MARSH's recommendation and advice and instructed MARSH to procure a wind damage policy with a per-occurrence limit of $49,970,530, wherein losses from separate instances would be covered up to that amount.

17.    In consideration of the premium paid to it by TIARA, CITIZENS issued to TIARA, a "Commercial – Residential Wind Only Policy" Policy No. 1308219 ("The Wind Damage Policy").

18.    TIARA expected that hurricane and/or windstorm damages, and ensuing damages as a direct result thereof, would be covered perils under the Wind Damage Policy.

19.    On or about September 4, 2004, Hurricane Frances struck South Florida and caused extensive damage to the Condominium Project, including damage to the interior of the building and the condominium units.

20.    Following the damage to the Condominium Project caused by Hurricane Frances described above, Hurricane Jeanne struck South Florida shortly thereafter on or about September 25, 2004, causing further damage to the Condominium Project.

21.    Following both hurricanes, prompt and proper notice was given to CITIZENS by TIARA.

22.    Following both hurricanes, TIARA immediately undertook to remediate its losses, including taking appropriate temporary and permanent repairs, retaining design

professionals and contractors and otherwise properly mitigating its damages. Specifically, TIARA began attempts to dry out the building as directed by CITIZENS and continued those efforts at a cost of over $100,000.00 per day, even after other professionals advised that the drying attempts had become ineffective, based on its belief that CITIZENS would pay out the two policy limits thereby providing sufficient insurance proceeds to pay for both the excessive dry-out efforts and the balance of the reconstruction costs.

      23.    In or about November and December 2004, it became clear that the total damages incurred by TIARA would likely exceed the single occurrence limit of the Wind Damage Policy which caused TIARA to seek the advice of MARSH as to whether, assuming the two hurricanes represented separate occurrences, the policy reinstated after the damage, making two policy limits available to TIARA.  MARSH, by and through MARSH USA (one of its "global offices" and/or agent) assured TIARA in writing in January, 2005 that the policy did reinstate, meaning that TIARA did have two policy limits, or nearly $100,000,000, available to it under the Wind Damage Policy with which to remediate its losses.  Accordingly, TIARA proceeded with the remediation, including following CITIZENS' directive to continue the largely ineffective drying efforts, in reliance on MARSH'S assurances.

      24.    Once partial payments by CITIZENS under the Wind Damage Policy approached one policy limit (*i.e.*, $49,970,530), CITIZENS informed TIARA that two policy limits were not available under the policy. On or about July 28, 2005, CITIZENS made a last partial payment, which CITIZENS explained represented the "balance of the limit of this policy."

25.     In denying any further payment to TIARA, CITIZENS, through its counsel, stated that TIARA was only entitled to recover one policy limit under the Wind Damage Policy for the two occurrences.  CITIZENS further explained that two policy limits were not available under the Wind Damage Policy for the two separate losses because the policy did not contain the per-occurrence limit of $49,970,530 that MARSH had been instructed to purchase for TIARA.

26.     Once CITIZENS refused to pay a second policy limit for the second hurricane, TIARA ceased the CITIZENS-directed drying program and entered into a lump sum contract to remove all of the interiors of the building so that the reconstruction could commence.

27.     As a result of MARSH's actions and/or omissions, TIARA ultimately did not receive sufficient insurance proceeds to fully or otherwise substantially reconstruct and restore the Condominium Project.

## COUNT I

## BREACH OF CONTRACT

28.     TIARA incorporates by reference the allegations contained above as if fully restated herein.

29.     TIARA entered into a contract with MARSH wherein TIARA retained MARSH to advise TIARA as to the amount and types of insurance policies it needed, and to advise TIARA as to its rights under those policies.

30.     As part of the contractual relationship, MARSH procured a number of insurance policies for TIARA pertaining to the Condominium Project, including, but not limited to, an appropriate wind damage policy.

7

31.    In April, 2004, MARSH recommended that TIARA purchase a policy for wind damage insurance that contained a per-occurrence limit of $49,970,530 for the Condominium Project.

32.    TIARA accepted MARSH's recommendation and instructed MARSH to procure the wind damage insurance policy that contained a per-occurrence limit of $49,970,530 for the Condominium Project, wherein losses from separate instances would be covered up to that amount.

33.    MARSH received commissions as consideration for its role as an insurance advisor and its procurement of the insurance policies for TIARA, including the wind damage policy.

34.    In procuring the wind damage policy for TIARA and in providing insurance advice to TIARA, MARSH owed a duty to TIARA to exercise the degree of care consistent with the greater knowledge and skill possessed by an insurance broker and advisor.  TIARA had the right to rely upon MARSH as a competent insurance broker and advisor, and in fact did rely upon MARSH to its detriment as alleged herein.

35.    MARSH's duties to TIARA included, but were not limited to, the duty to exercise the reasonable skill and care to obtain the appropriate and sufficient insurance coverage to enable TIARA to fully repair and restore the Condominium Project to the condition existing before the hurricane damage, the duty to properly advise TIARA in regard to the terms of the insurance policy as they relate to coverage, and the duty to take such other actions consistent with the greater degree of knowledge and skill possessed by insurance brokers and advisors.

36.     MARSH breached its express and/or implied legal duties under the contract with TIARA by its actions and/or omissions, including, but not limited to, the following:

a.      Breaching its fiduciary or other obligations to TIARA;

b.      Exposing TIARA to unnecessary additional damages;

c.      Failing to procure proper insurance coverage;

d.      Failing to procure the adequate amount of insurance under the Wind Damage Policy, as CITIZENS subsequently asserted, in reviewing the hurricane damage claims, that TIARA was underinsured;

e.      Failing to advise TIARA of its failure to obtain proper coverage under the Wind Damage Policy, such that TIARA would be able to receive sufficient insurance benefits to repair and restore the Condominium Project to the condition existing before the hurricane damage;

f.      Failing to advise TIARA that the Wind Damage Policy obtained did not contain the coverage desired by TIARA;

g.      Failing to adequately explain the scope of coverage involved in the Wind Damage Policy;

h.      Failing to explain the scope of the highly complex insurance coverage in writing;

i.      Failing to advise TIARA that the Wind Damage Policy obtained did not contain what is known as a "reset clause", the absence of

which could leave, or could otherwise be construed to leave, TIARA without the full amount of the requested coverage;

j.    Failing to explain the terms and scope of the Wind Damage Policy in a manner that was adequate to enable TIARA to be fully informed of and understand the limitations or exceptions;

k.    Failing to properly advise and make proper recommendations to TIARA and/or otherwise making false representations to TIARA insofar as MARSH advised TIARA that the policy limit was reinstated after an occurrence when in fact Florida law required that a "reset clause" be included in the policy before more than one policy limit would be available;

l.    Failing to obtain a prompt commitment and/or verification from CITIZENS as to the total amount of insurance benefits available to TIARA under the Wind Damage Policy as the result of the damage caused by the two hurricanes;

m.   Failing to properly advise and recommend to TIARA that it should obtain a prompt commitment and/or verification from CITIZENS as to the total amount of insurance benefits available to TIARA under the Wind Damage Policy as the result of the damage caused by the two hurricanes;  and

n.    Failing to properly advise TIARA in regard to the appropriate and/or best method of adjusting the losses to the Condominium Project and presenting them to CITIZENS.

37.     As a direct and proximate result of MARSH'S breaches, TIARA and its

members have suffered, and will continue to suffer, damages by way of the incurrence of

significantly higher remediation costs, including millions of dollars of unnecessary

drying expenses which would had been avoided had TIARA known that CITIZENS

would be able to avail itself of significant defenses to the payment of a second policy

limit.   TIARA was further damaged in that it was forced to prematurely settle its dispute

with CITIZENS as to the availability of a second policy limit under duress and for less

than it was entitled and TIARA incurred significant attorney fees in connection with that

litigation.   TIARA has also incurred additional direct and consequential damages due to

its inability to completely repair the building because of the lack of sufficient insurance

proceeds.

WHEREFORE, Tiara Condominium Association, Inc. demands judgment in its

favor against MARSH in an amount in excess of $75,000.00 to compensate TIARA for

all of its direct, consequential, and liquidated damages, plus interest, costs and attorneys'

fees, together with such other relief as this Court deems just and equitable under the

circumstances.

## COUNT II

### NEGLIGENT MISREPRESENTATION
### (Fraud in the Inducement)

38.     TIARA incorporates by reference the allegations contained above as if

fully restated herein.

39.     TIARA reasonably relied on MARSH to procure an appropriate wind

damage policy that would meet its requirements, as alleged above.

40.    MARSH, by and through MARSH USA (one of its "global offices" and/or its agent), made material false representations to TIARA concerning the coverage and terms of the Wind Damage Policy in that MARSH represented in or about April, 2004 to TIARA that the Wind Damage Policy would have a per-occurrence limit of $49,970,530 wherein losses from separate instances would each be covered up to that amount.

41.    MARSH made the representations believing them to be true, but they were, in fact, false.  MARSH was negligent in making the representations because it should have known that the statements were false.

42.    MARSH's representations, by and through MARSH USA, as described above, were material to the transaction.

43.    MARSH made the representations with the intent that TIARA rely upon them.

44.    TIARA reasonably relied upon MARSH's representations, and was induced into instructing MARSH to procure the insurance policy with CITIZENS on the basis of such representations.

45.    The representations were false when they were made, as CITIZENS subsequently asserted that the Wind Damage Policy limit did not reinstate as represented by Neil Hewitt and that, accordingly, TIARA was entitled to receive only one policy limit.

46.    As a direct and proximate result, and foreseeable consequence of, MARSH's misrepresentations, TIARA has suffered damages flowing from the massive financial losses it sustained, and continues to sustain, as a result of the hurricane damage and the inability to receive two policy limits under the Wind Damage Policy.

Specifically, TIARA incurred significantly higher remediation costs by way of millions of dollars of unnecessary drying expenses which would had been avoided had TIARA known that CITIZENS would be able to avail itself of significant defenses to the payment of a second policy limit. TIARA was further damaged in that it was forced to prematurely settle its dispute with CITIZENS as to the availability of a second policy limit under duress and for less than it was entitled and TIARA incurred significant attorney fees in connection with that litigation. TIARA has also incurred additional direct and consequential damages due to its inability to completely repair the building due to the lack of insurance proceeds.

WHEREFORE, Tiara Condominium Association, Inc. demands a Judgment in its favor against MARSH in an amount in excess of $75,000.00 to compensate TIARA for all of its direct, consequential, and liquidated damages, plus interest, costs and attorneys' fees, together with such other relief as this Court deems just and equitable under the circumstances.

## COUNT III

## NEGLIGENT MISREPRESENTATION

47.    TIARA incorporates by reference the allegations contained above as if fully restated herein.

48.    In the alternative, in the event that it is found that TIARA did not have a contract with MARSH or that the provision of insurance advice by MARSH to TIARA was not a part of the contract, TIARA is asserting a claim for negligent misrepresentation.

49.     Subsequent to, and separate from, the procurement of the policy, TIARA relied on MARSH, in its role and capacity which it undertook as an insurance advisor, to interpret and explain the terms and conditions of coverage of the Wind Damage Policy.

50.     In this regard, in response to a direct inquiry from TIARA, MARSH, by and through MARSH USA (one of its "global offices" and/or its agent), made material false representations to TIARA concerning the coverage and terms of the Wind Damage Policy.  Specifically, in a letter dated January 5, 2005, Neil Hewitt, Senior Vice President of MARSH and/or MARSH USA represented to TIARA that the Wind Damage Policy had a specific limit per occurrence and that the Wind Damage Policy "limit is reinstated." (see **Exhibit 1**).

51.     MARSH, by and through MARSH USA (one of its "global offices" and/or its agent), made the representations intentionally or recklessly, with disregard for their truth or falsity.

52.     Alternatively, MARSH, by and through MARSH USA (one of its "global offices" and/or its agent), made the representations believing them to be true, but they were, in fact, false.  MARSH was negligent in making the representations because it should have known that the statements were false.

53.     MARSH's representations, as described immediately above, were material to decisions made by TIARA in connection with the manner in which it undertook to remediate and reconstruct the damage caused to the Condominium Project, specifically its decision to follow a directive by CITIZENS to continue a very expensive and largely ineffective drying program and to delay a complete 'gutting' of the interior of

the building which, in turn, delayed the commencement of the reconstruction of the building.

54.    MARSH, by and through MARSH USA (one of its "global offices" and/or its agent), made the representations with the intent that TIARA rely upon them, and TIARA did, in fact, reasonably rely upon them to its detriment.

55.    The representations were false when they were made, as CITIZENS denied that the Wind Damage Policy limit reinstated as represented by Neil Hewitt, and instead asserted that TIARA was entitled to receive only one policy limit.

56.    As a foreseeable consequence of MARSH's misrepresentations, TIARA has suffered damages flowing from the massive financial losses it sustained, and continues to sustain, as a result of the hurricane damage and the inability to receive two policy limits under the Wind Damage Policy, specifically significantly higher remediation costs by way of millions of dollars of unnecessary drying expenses which would had been avoided had TIARA knew that CITIZENS would be able to avail itself of significant defenses to the payment of a second policy limit.  TIARA was further damaged in that it was forced to prematurely settle its dispute with CITIZENS as to the availability of a second policy limit under duress and for less than it was entitled and to incur significant attorney fees in connection with that litigation.  TIARA has also incurred additional direct and consequential damages due to its inability to completely repair the building due to the lack of insurance proceeds.

58.    MARSH USA is one of the offices of MMC and/or Marsh, Inc., or those defendants exercised substantial control over MARSH USA and/or otherwise participated in the misrepresentations such that they are liable for the damages incurred by TIARA.

WHEREFORE, Tiara Condominium Association, Inc. demands a Judgment in its favor against MARSH in an amount in excess of $75,000.00 to compensate TIARA for all of its direct, consequential, and liquidated damages, plus interest, costs and attorneys' fees, together with such other relief as this Court deems just and equitable under the circumstances.

## COUNT IV

## NEGLIGENCE

59.    TIARA incorporates by reference the allegations contained above as if fully restated herein.

60.    In the alternative, in the event that it is found that TIARA did not have a contract with MARSH or that the provision of insurance advice by MARSH to TIARA was not a part of the contract, TIARA is asserting a claim for negligence.

61.    TIARA retained MARSH to advise TIARA as to the amount and types of insurance policies it needed, and to advise TIARA as to its rights under those policies. MARSH undertook the role of an insurance advisor to TIARA, and assumed the attendant duties and obligations of such a role.

62.    As part of the relationship, MARSH procured a number of insurance policies for TIARA pertaining to the Condominium Project, including, but not limited to, an appropriate wind damage policy.

63.    In April, 2004, MARSH recommended that TIARA purchase a policy for

wind damage insurance that contained a per-occurrence limit of $49,970,530 for the Condominium Project.

64.    TIARA accepted MARSH's recommendation and instructed MARSH to procure the wind damage insurance policy that contained a per-occurrence limit of $49,970,530 for the Condominium Project, wherein losses from separate instances would be covered up to that amount.

65.    In procuring the wind damage policy for TIARA and in providing insurance advice to TIARA, MARSH owed a duty to TIARA to exercise the degree of care consistent with the greater knowledge and skill possessed by an insurance broker and advisor.  TIARA had the right to rely upon MARSH as a competent insurance broker and advisor, and in fact did rely upon MARSH to its detriment as alleged herein.

67.    MARSH's duties to TIARA included, but were not limited to, the duty to exercise the reasonable skill and care to obtain the appropriate and sufficient insurance coverage to enable TIARA to fully repair and restore the Condominium Project to the condition existing before the hurricane damage, the duty to properly advise TIARA in regard to the terms of the insurance policy as they relate to coverage, and the duty to take such other actions consistent with the greater degree of knowledge and skill possessed by insurance brokers and advisors.

68.    MARSH breached its express and/or implied legal duties to TIARA by its actions and/or omissions, including, but not limited to, the following:

    a.    Breaching its fiduciary or other obligations to TIARA;

    b.    Exposing TIARA to unnecessary additional damages;

c.    Failing to procure proper insurance coverage;

d.    Failing to procure the right amount of insurance under the Wind Damage Policy, as CITIZENS subsequently asserted, in reviewing the hurricane damage claims, that TIARA was underinsured;

e.    Failing to advise TIARA of its failure to obtain proper coverage under the Wind Damage Policy, such that TIARA would be able to receive sufficient insurance benefits to repair and restore the Condominium Project to the condition existing before the hurricane damage;

f.    Failing to advise TIARA that the Wind Damage Policy obtained did not contain the coverage desired by TIARA;

g.    Failing to adequately explain the scope of coverage involved in the Wind Damage Policy;

h.    Failing to explain the scope of the highly complex insurance coverage in writing;

i.    Failing to advise TIARA that the Wind Damage Policy obtained did not contain what is known as a "reset clause", the absence of which could leave, or could otherwise be construed to leave, TIARA without the full amount of the requested coverage;

j.    Failing to explain the terms and scope of the Wind Damage Policy in a manner that was adequate to enable TIARA to be fully informed of and understand the limitations or exceptions;

k.    Failing to properly advise and make proper recommendations to TIARA and/or otherwise making false representations to TIARA insofar as MARSH advised TIARA that the policy limit was reinstated after an occurrence when in fact Florida law required that a "reset clause" be included in the policy before more than one policy limit would be available;

l.    Failing to obtain a prompt commitment and/or verification from CITIZENS as to the total amount of insurance benefits available to TIARA under the Wind Damage Policy as the result of the damage caused by the two hurricanes;

m.    Failing to properly advise and recommend to TIARA that it should obtain a prompt commitment and/or verification from CITIZENS as to the total amount of insurance benefits available to TIARA under the Wind Damage Policy as the result of the damage caused by the two hurricanes; and

n.    Failing to properly advise TIARA in regard to the appropriate and/or best method of adjusting the losses to the Condominium Project and presenting them to CITIZENS.

69.    As a direct and proximate result of MARSH'S negligence, TIARA and its members have suffered, and will continue to suffer, damages by way of the incurrence of significantly higher remediation costs, including millions of dollars of unnecessary drying expenses which would had been avoided had TIARA known that CITIZENS

19

would be able to avail itself of significant defenses to the payment of a second policy

limit.    TIARA was further damaged in that it was forced to prematurely settle its dispute

with CITIZENS as to the availability of a second policy limit under duress and for less

than it was entitled and TIARA incurred significant attorney fees in connection with that

litigation.    TIARA has also incurred additional direct and consequential damages due to

its inability to completely repair the building because of the lack of sufficient insurance

proceeds.

70.    TIARA was further damaged by way of property damage to the

condominium building.    In this regard, the condominium building incurred damage as the

result of the continuation of the ineffective dry-out of the building by, among other

things, the additional proliferation of mold and mold damage.    TIARA continued the

drying efforts in reliance on MARSH'S assurances that the Wind Damage Policy did

reinstate, meaning that TIARA did have two policy limits, or nearly $100,000,000,

available to it under the policy with which to remediate its losses.

WHEREFORE, Tiara Condominium Association, Inc. demands judgment in its

favor against MARSH in an amount in excess of $75,000.00 to compensate TIARA for

all of its direct, consequential, and liquidated damages, plus interest, costs and attorneys'

fees, together with such other relief as this Court deems just and equitable under the

circumstances.

## JURY DEMAND

Plaintiff, TIARA, through its attorneys, hereby demands a trial by jury on all issues so triable in this matter.

DATED: 11 February 2008

**ERNSTROM & DRESTE, LLP**

_s/ William E. Brueckner_

William E. Brueckner (WB6646)
317 Madison Avenue
Suite 703
New York, New York  10017-5201
212.687.0303
*Local Counsel for Plaintiff*

Mark L. McAlpine, *Pro Hac Vice*
Christopher E. Wasson, *Pro Hac Vice*
**McALPINE & ASSOCIATES, P.C.**
3201 University Drive
Suite 100
Auburn Hills, Michigan  48326-2396
248.373.3700
*Lead Counsel for Plaintiff*