William E. Brueckner (WB6646)
**ERNSTROM & DRESTE, LLP**
317 Madison Avenue
Suite 703
New York, New York 10017-5201
212.687.0303
*Local Counsel for Plaintiff*

Mark L. McAlpine, *pro hac vice*
Christopher E. Wasson, *pro hac vice*
**MCALPINE & ASSOCIATES, P.C.**
3201 University Drive
Suite 100
Auburn Hills, Michigan  48326
248.373.3700
*Lead Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TIARA CONDOMINIUM ASSOCIATION,
INC., a Florida non-profit corporation, in its
own name and as agent for all owners of record
of all individual condominium parcels within
the Tiara Condominium,

|  |  |
|---|---|
| Plaintiff, | Case No. 07-CIV-9392 |
| -against- | Hon. Harold A. Baer, Jr. |
| MARSH & MCLENNAN COMPANIES,
INC., a Delaware corporation, MARSH, INC.,
and MARSH USA, INC., | ELECTRONICALLY FILED |
| Defendants. |  |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE
TO MARSH DEFENDANTS' MOTION TO TRANSFER VENUE**

DATED:  FEBRUARY 11, 2008

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 6

I.     STANDARD OF REVIEW ...................................................................................... 6

II.    PLAINTIFF COULD NOT BRING THIS CASE IN THE SOUTHERN DISTRICT OF
       FLORIDA ................................................................................................................. 7

III.   TRANSFER OF VENUE INCONVENIENCES THE PARTIES AND WITNESSES
       WHILE FRUSTRATING THE INTERESTS OF JUSTICE...................................... 9

       A.    Plaintiff's Choice of Forum .................................................................. 10

       B.    Convenience of Parties ......................................................................... 10

       C.    Convenience of Witnesses .................................................................... 11

       D.    Place of Underlying Facts..................................................................... 12

       F.    Availability of Process.......................................................................... 14

       G.    The Relative Means of the Parties ........................................................ 14

       H.    Familiarity with the Governing Law..................................................... 15

       I.    Trial Efficiency and the Interests of Justice.......................................... 16

CONCLUSION.................................................................................................................. 17

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Berman v. Informix Corp.,*
30 F.Supp.2d 653…………………....…………………………………………..……...…..….7, 10

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.,*
569 F.Supp. 773……...………………………………………………………………………....7

*Dwyer v. General Motors Corp.,*
853 F.Supp. 690……………...……………………………………………………….…..…….9

*Editorial Musical Latino Americana, S.A. v. Mar Int'l Records,*
 829 F. Supp. 62…....……………………………………………………………………….…..7

*Electrical Workers Pension Fund, Local 103, v. Nuvelo, Inc.,*
2007 WL 2068107…....…………………………………………………………....…..9,11

*Foster v. United States Lines Co.,*
188 F.Supp. 389……………....……………………………………………………..…..10

*Gulf Oil Corp. v. Gilbert,*
 330 U.S. 501……....…………………………………………………………………….…..14

*Howard v. Four Seasons Hotels Ltd.,*
96 Civ. 4587, 1997 WL 107663……….....……………………………………………....6, 9

*In re Hanger Orthopedic Group, Inc.,*
418 F.Supp.2d 164……...…………………………………………………………….…..13, 15

*In re Nematron Corp. Secs. Litig.,*
30 F.Supp.2d 397……...…………………………………………………………..…….13, 15

*Kanbar v. U.S. Healthcare, Inc.,*
715 F. Supp. 602…………….....……………………………………………………….…..9

*Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l,*
245 F. Supp. 2d 523……...…………………………………………………………….…..16

*Montgomery v. TAP Enterprise, Inc.,*
 2007 WL 576128……...……………………………………………………………..…..6, 7

*Rosenberg v. Pillsbury Co., et al.,*
718 F.Supp. 1146……...…………………………………………………………..……...15

*Schnabel v. Ramsey Quantitative Systems, Inc.*,
322 F.Supp.2d 505.................................................................…….......7, 10, 13

*Van Dusen v. Barrack,*
376 U.S. 612…........................................................................................7

**FEDERAL STATUTES**

28 U.S.C. Sec. 1391.................................................................................7

28 U.S.C. Sec. 1404(a).......................................................................1, 2, 6, 7

Plaintiff Tiara Condominium Association, Inc. ("Tiara") respectfully submits this Memorandum of Law in Support of the Plaintiff's Response to Marsh Defendants' Motion to Transfer Venue.

## INTRODUCTION

This case has a very strong connection to New York and should not be needlessly transferred to the Southern District of Florida. This action involves a large insurance broker and two other companies which are its subsidiaries. Venue is proper in this Court in that all three of the Marsh Defendants maintain their principal place of business in New York, New York. Marsh Defendants improperly attempt to unnecessarily inconvenience the Court, parties, and witnesses as well as increase the cost of trying this case by moving for transfer of venue. As demonstrated below, Marsh Defendants' motion to transfer venue to the Southern District of Florida is utterly meritless.

In determining whether to transfer an action under 28 U.S.C. Sec. 1404(a), courts in this district possess discretion. However, this discretion is restricted only to instances where 1) the plaintiff could have brought the case initially in the proposed transferee forum; and 2) the transfer would promote the convenience of parties and witnesses and would be in the interests of justice.

This case arises out of insurance advice provided by Marsh Defendants and has no solid connection with the Southern District of Florida. Notably, Marsh & McLennan Companies, Inc., Marsh, Inc., and Marsh USA, Inc. all have a principal place of business in New York, New York. Further, while Marsh Defendants claim that Marsh USA, Inc. provided insurance brokerage service to Tiara through its local office in Sunrise, Florida and that is where the alleged tortuous acts occurred, that office is not located in the Southern District of Florida. Plaintiff could not

have brought this matter in the Southern District of Florida thus rendering further analysis unnecessary.

Even if the Court were to indulge in further analysis, neither the convenience of parties or witnesses nor the interests of justice would be served by a transfer of venue. When determining whether to transfer an action under 28 U.S. C. Sec. 1404 (a), courts in this judicial district consider various factors. The privilege of choosing the forum is widely recognized as a factor to be considered. In fact, Tiara's choice of forum in the Southern District of New York is accorded substantial weight.

The convenience of parties is also an important consideration in deciding whether a transfer of venue is warranted. Clearly, Defendants are not inconvenienced by a lawsuit filed in New York, New York where they maintain their principal places of business. Indeed, a review of reported cases suggests that Defendants are no strangers to litigation in the Southern District of New York. The reality is that transfer of this action to Florida would actually reallocate inconvenience from Plaintiff to Marsh Defendants. This factor strongly weighs in favor of venue remaining in the Southern District of New York.

Likewise, the convenience of witnesses is also a factor that strongly weighs in favor of venue remaining in the Southern District of New York. The nature of key witness testimony will center on misrepresentations and/or negligent actions of the Marsh Defendants as a result of corporate directives, corporate policy, and corporate training. Those material issues mostly require witnesses from Marsh Defendants' principal places of business in New York, New York. Meanwhile, many of Plaintiff's key lay witnesses live on the East Coast and can be more readily produced in the Southern District of New York.

Location of operative facts is yet another important consideration in deciding a transfer motion. In this case, many of the operative facts occurred outside of the Southern District of Florida. The main operative facts center on misrepresentations made by Marsh Defendants in advising Tiara regarding insurance coverage. Further, upon information and belief, corporate decisions regarding policy coverage, and meetings regarding how to respond to Tiara's concerns regarding the amount of coverage occurred at Marsh Defendants' principal place of business in New York, New York. This factor strongly weighs in favor of venue remaining in the Southern District of New York.

Finally, judicial economy is also a factor in deciding a transfer motion. Transferring venue from this jurisdiction to the Southern District of Florida does not promote judicial economy. Similar issues have not been litigated in the Southern District of Florida. Additionally, a transfer would likely cause trial to occur on or around June 2009 as opposed to the January 2009 trial date set in the Southern District of New York.

Based on the above, Tiara could not have brought this case initially in the Southern District of Florida and even if it could, the balance of convenience and interests of justice strongly weigh in favor of venue remaining in the Southern District of New York.

## BACKGROUND

Plaintiff Tiara Condominium Association, Inc. retained Defendants Marsh & McLennan Companies, Inc., Marsh Inc., and Marsh USA, Inc. (collectively referred to as "Marsh Defendants") to provide insurance advice and procure a number of insurance policies pertaining to the Tiara Condominium (the "Condominium Project") and Plaintiff's business operations (comprised of the management and administration of the Condominium Project). In April, 2004, Marsh Defendants proposed and recommended to Tiara that it purchase several insurance

policies, including but not limited to, a policy for wind damage insurance. Marsh Defendants advised Tiara regarding the insurable value of the Condominium Project and the specific policy limits that should be purchased by Tiara, all of which was contained in its "Insurance Proposal for Tiara Condominium Association, Inc." dated April 8, 2004. In particular, Marsh Defendants recommended and advised that Tiara purchase a wind damage insurance policy from Citizens Property Insurance Corporation ("Citizens") with a per-occurrence limit of $49,970,530 wherein losses from separate instances would be covered up to that amount. Tiara accepted Marsh Defendants' recommendation and advice and instructed Marsh Defendants to procure a wind damage policy with a per-occurrence limit of $49,970,530, wherein losses from separate instances would be covered up to that amount.

Tiara expected that hurricane and/or windstorm damages, and ensuing damages as a direct result thereof, would be covered perils under the Wind Damage Policy. On or about September 4, 2004, Hurricane Frances struck South Florida and caused extensive damage to the Condominium Project, including damage to the interior of the building and the condominium units. Shortly thereafter, Hurricane Jeanne struck the Condominium Project, causing further damage to the Condominium Project. Following both hurricanes, prompt and proper notice was given to Citizens by Tiara. Following both hurricanes, Tiara immediately undertook to remediate its losses, and otherwise properly mitigating its damages. Specifically, Tiara began attempts to dry out the building as directed by Citizens and continued those efforts at a cost of over $100,000.00 per day, even after other professionals advised that the drying attempts had become ineffective, based on its belief that if it complied with Citizens' directive then Citizens would pay out the two policy limits thereby providing sufficient insurance proceeds to pay for both the excessive dry-out efforts and the balance of the reconstruction costs.

In or about November and December 2004, it became clear that the total damages incurred by Tiara would likely exceed the single occurrence limit of the Wind Damage Policy which caused Tiara to seek the advice of Marsh Defendants as to whether the two hurricanes represented separate occurrences and whether the policy reinstated after the damage, making two policy limits available to Tiara. Marsh Defendants assured Tiara in writing in January, 2005 that the policy did reinstate, thus Tiara did have two policy limits, or nearly $100,000,000, available to it under the Wind Damage Policy with which to remediate its losses. (Exhibit A). Accordingly, Tiara proceeded with the remediation, including the largely ineffective drying efforts, in reliance on Marsh Defendants' assurances. Once partial payments by Citizens under the Wind Damage Policy approached one policy limit (*i.e.*, $49,970,530), Citizens informed Tiara that two policy limits were not available under the policy.

On or about July 28, 2005, Citizens made a last partial payment, which Citizens explained represented the "balance of the limit of this policy." In denying any further payment to Tiara, Citizens stated, in direct contradiction to the advice of Marsh Defendants, that Tiara was only entitled to recover one policy limit under the Wind Damage Policy for the two occurrences. Citizens further explained that two policy limits were not available under the Wind Damage Policy for the two separate losses because the policy did not contain the per-occurrence limit of $49,970,530 that Marsh Defendants had been instructed to purchase for Tiara. Once Citizens refused to pay a second policy limit for the second hurricane, Tiara ceased the Citizens-directed drying program and entered into a lump sum contract to remove all of the interiors of the building so that the reconstruction could commence. As a result of Marsh Defendants' actions and/or omissions in procuring and later providing advice regarding the policy, Tiara

ultimately did not receive sufficient insurance proceeds to fully or otherwise substantially reconstruct and restore the Condominium Project.

On or about October 19, 2007, Plaintiff filed this lawsuit against Marsh Defendants asserting a negligence claim and two fraud counts. Simultaneous with this response, Plaintiff has amended its lawsuit to include a breach of contract claim and to further define its negligent misrepresentation claims. Without question, the center of gravity of this case is in New York. All three of the Marsh Defendants maintain their principal places of business in New York. Also, the main operative facts center on negligent acts and/or misrepresentations made by Marsh Defendants from their principal place of business in New York, New York in advising Plaintiff regarding insurance coverage. Further, upon information and belief, corporate decisions regarding policy coverage, and meetings regarding how to respond to Tiara's concerns regarding the amount of coverage occurred at Marsh Defendants' principal place of business in New York, New York. This case has a very strong connection to New York and should not be transferred to the Southern District of Florida.

<b>ARGUMENT</b>

**I.    STANDARD OF REVIEW**

The change of venue statute provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. Sec. 1404(a); *see generally, e.g., Montgomery v. TAP Enterprise, Inc.*, 2007 WL 576128 at * 2 (S.D.N.Y. Feb. 26, 2007) (Baer, J.) (attached as Exhibit B).

"The decision to transfer an action 'lies within the sound discretion of the district court.'" *Howard v. Four Seasons Hotels Ltd.*, 1997 WL 107663 at * 1 (S.D.N.Y. March 10, 1997)

(attached as Exhibit C).  However, despite this discretion, the Court must honor certain

restrictions imposed by Sec. 1404(a).  *Id.* at 1.  Hence, as a threshold issue a "court may transfer

venue only if 1) the plaintiff could have brought the case initially in the proposed transferee

forum; and 2) the transfer would promote the convenience of parties and witnesses and would be

in the interests of justice." *Schnabel v. Ramsey Quantitative Systems, Inc.*, 322 F. Supp.2d 505,

514 (S.D.N.Y. 2004);  *See, e.g, Montgomery v. TAP Enterprise, Inc.,* 2007 WL 576128 at \*2 n.

6, *citing Van Dusen v. Barrack,* 376 U.S. 612 (1964); *See Consol. Metal Prods., Inc. v. Am.*

*Petroleum Inst.,* 569 F.Supp. 773, 774 (D.D.C.1983). Further, the burden to establish the

necessity for a transfer of forum rests squarely with the Marsh Defendants. S*ee Editorial*

*Musical Latino Americana, S.A. v. Mar Int'l Records,* 829 F. Supp. 62, 66 (S.D.N.Y. 1993)

(movant must make "clear and convincing showing").  Meanwhile, substantial weight is afforded

to Plaintiff's choice of forum. *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 659

(S.D.N.Y.1998).

## II.    PLAINTIFF COULD NOT BRING THIS CASE IN THE SOUTHERN DISTRICT OF FLORIDA

In this instance, Marsh has failed to satisfy either prong discussed above and, therefore,

their Motion to Transfer Venue should be denied.  The venue statute provides that an action

founded upon diversity of citizenship may be brought only in a district where a substantial part

of the events or omissions giving rise to the claim occurred.  28 U.S.C. Sec. 1391.  As to the first

restriction, Defendants request transfer of venue to the Southern District of Florida. However,

that forum is improper for transfer.  Marsh & McLennan Companies, Inc., the parent company of

both Marsh Inc. and Marsh USA Inc, is a Delaware corporation with its principal place of

business located in New York, New York. (Defendants' Answer and Affirmative Defenses ¶ 2).

Further, Marsh, Inc. is a Delaware corporation with its principal place of business in New York, New York. (Defendants' Answer and Affirmative Defenses ¶ 3).    Additionally, Marsh USA Inc., which is wholly owned by Marsh, Inc., is a Delaware corporation with its principal place of business located in New York, New York.  (Defendants' Answer and Affirmative Defenses Pars. 3 and 4).  Clearly, Marsh Defendants rule their business, make corporate decisions, set corporate policy, conduct corporate policy, direct corporate training, and author corporate materials from their principal place of business in New York, New York. While the Southern District of New York has personal jurisdiction over all three Defendants and presents a proper venue, the Southern District of Florida undisputedly lacks personal jurisdiction over Marsh & McLennan Companies, Inc. and Marsh, Inc.

Marsh Defendants state that the Southern District of Florida has personal jurisdiction over one of the Defendants, Marsh USA Inc., because that Defendant allegedly provided insurance brokerage services to Tiara in Florida through its local office in Sunrise, Florida and the wrongful acts allegedly occurred there.  (Defendants' Motion to Transfer Venue, p. 7). Defendants claim further that a substantial part of the events giving rise to the claim occurred there. *Id.*  However, Defendants neglect to mention any possible connection between Marsh & McLennan Companies, Inc. or Marsh Inc, and the Southern District of Florida.  Notably, while Marsh USA Inc. claims that a substantial part of the events giving rise to the claim occurred at its Sunrise, Florida office, that office is actually located in the Middle District of Florida. (Defendants' Answer and Affirmative Defenses ¶ 6) (*See* Declaration of Brian V. Fitzsimmons ("Fitzsimmons Decl.") ¶ 5).  Thus, Defendants have failed to satisfy the first restriction on the Court's discretion.  Therefore, no further analysis is warranted and Defendants' Motion to Transfer Venue should be denied.

### III.    TRANSFER OF VENUE INCONVENIENCES THE PARTIES AND WITNESSES WHILE FRUSTRATING THE INTERESTS OF JUSTICE

However, assuming the Court somehow determines that this matter could have been brought in the Southern District of Florida and that further venue analysis is warranted, any transfer to that district would neither promote the convenience of parties and witnesses nor serve the interests of justice.   The second restriction requires the Marsh Defendants to satisfy the "heavy" burden of proving that a weighing of certain factors requires that the matter be transferred to a different venue.  *Howard v. Four Seasons Hotels,* 1997 WL 107633 at *2 (S.D.N.Y., March 10, 1997) ("Section 1404(a) requires the moving party to satisfy a heavy burden."); *Kanbar v. U.S. Healthcare, Inc.,* 715 F. Supp. 602, 604 (S.D.N.Y. 1989) ("the party seeking the transfer bears the burden on establishing, by a clear and convincing showing, the propriety of transfer."); *Dwyer v. General Motors Corp.,* 853 F.Supp. 690, 692 (S.D.N.Y. 1994).  Here, Marsh Defendants fail to meet their "heavy burden" of establishing that a transfer of venue is necessary.

"When evaluating a motion to transfer, a court should consider the following factors: (1) the convenience of the witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of the relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of circumstances." *Electrical Workers Pension Fund, Local 103, v. Nuvelo, Inc.,* 2007 WL 2068107, at *3 (S.D.N.Y. July 17, 2007) (Baer, J.) (attached as Exhibit D).  As demonstrated below, the balancing of these factors favors denial of Defendants' Motion to Transfer Venue and this matter should remain in the Southern District of New York.

### A.    Plaintiff's Choice of Forum

Plaintiff's choice of the Southern District of New York as the forum is accorded substantial weight and "should not be disturbed unless the balance of factors is strongly in favor" of the movant. *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y.1998).  It is well recognized that "plaintiff's privilege conferred by statute of choosing the forum he selected is a factor to be considered." *Schnabel,* 322 F.Supp.2d at 518.  *See also, Foster v. United States Lines Co.*, 188 F.Supp. 389 (S.D.N.Y. 1960) (where the interests are evenly balanced, or where it is impossible to determine where the equities preponderate, transfer should be denied). Here, in Plaintiff's action against three entities with their principal places of business in New York, New York where they make corporate decisions regarding policy coverage, set corporate policy, conduct corporate policy, direct corporate training, and author corporate materials, Plaintiff's choice of forum is entitled to great deference.  Additionally, even without deference, there remains abundant support to deny Defendants' request for transfer based on the rest of the factors, as further explained below.

### B.    Convenience of Parties

Marsh Defendants all reside in the Southern District of New York.  As noted above, Defendants neglect to mention any possible connection between Marsh & McLennan Companies, Inc. or Marsh Inc, and the Southern District of Florida or even the state of Florida. Allowing the Southern District of New York to remain the proper venue for this matter would not cause Marsh Defendants to suffer any economic hardship if trial was held in New York. Rather, transfer of the action to Florida would most likely inconvenience Marsh & McLennan, and Marsh Inc.  Further, even if Marsh USA maintains an office in Sunrise, Florida, it would clearly be inconvenienced as well because all corporate witnesses based out of New York would

10

have to travel to Florida for trial. In fact, litigation in the Southern District of New York is not unusual for the Marsh Defendants. Further, jurisdiction in New York, New York is so clear that Defendants fail to even challenge it, and the reported cases suggest that Defendants have engaged in far more litigation in this district than in the State of Florida. (Exhibits E and F.)

While Marsh Defendants are not at all inconvenienced because their principal place of business and home base is in New York, Tiara is incorporated in Florida, so it will have to travel to New York for trial of this matter. Transfer of this action would actually reallocate inconvenience from Tiara to Marsh Defendants. The facts fail to indicate a significant inconvenience to any of the Marsh Defendants. Instead, taking Plaintiff's contentions into account it appears the facts evidence greater convenience for Marsh Defendants in conducting this litigation at its home base in New York. This factor obviously favors venue remaining in the Southern District of New York.

### C.    Convenience of Witnesses

Marsh Defendants naively argue its material witnesses would be inconvenienced by allowing venue to remain in New York because all of the Marsh USA witnesses regarding negotiation, procurement and issuance of the Policy live in Florida. (Fitzsimmons Decl. ¶ 12A-C.) However, the proper balancing of this factor must take into account the nature of each witness' testimony. *See Electrical Workers*, 2007 WL 2068107 at * 4, ("[I]t is the nature of the testimony and not the number of prospective witnesses on each side that is important.")(Baer, J.). While procurement and issuance of the Policy will be involved in this matter, the majority of material matters involved in Plaintiff's case center on misrepresentations, negligence, advice, and/or other breaches of obligation by Marsh Defendants as a result of corporate decisions regarding policy coverage, meetings regarding how to respond to policy coverage inquiries,

corporate directives, corporate policy, corporate training, and corporate materials. Those material matters certainly require witnesses from Marsh Defendants' principal place of business, headquarters, and home base located in New York, New York. While some tangentially related witnesses may reside in Florida, the vast number of the most material witnesses are located in New York.

Likewise, the majority of Tiara's important lay witnesses do not reside in Florida, in fact, as a result of the damage caused to the Tiara Condominium building and the fact that it has still not been rebuilt, its material resident/lay witnesses are scattered all over the country. In fact, many of Tiara's witnesses live on the East Coast and can be more readily produced in the Southern District of New York, including several who live in New York; Lou Brindisi resides in and practices law in New York, Norm Adams resides in New Jersey, and Edward Kisco resides in Pennsylvania. These material lay witnesses will testify regarding, among other things, the role of Marsh as an insurance advisor to Tiara.

Additionally, several non-party witnesses reside on the East Coast, most importantly, representatives of Goodman-Gable-Gould ("GGG"). GGG has its principal place of business in Maryland, which is closer to New York than to Florida. Tiara anticipates calling several key employees of GGG, including Randy Goodman. Also, Tiara intends to call Gary Rogers, the "clerk of the works" for the remediation, who resides in Michigan. Thus, it is clear that this factor weighs in favor of venue remaining in the Southern District of New York.

**D.    Place of Underlying Facts**

Marsh Defendants argue that the locus of the operative facts of this matter occurred in the Southern District of Florida. This matter involves on misrepresentations and/or negligent advice by the Marsh Defendants. Misrepresentations and omissions occur in the district where

they are transmitted rather than where they are received. *In re Nematron Corp. Secs. Litig.,* 30 F.Supp.2d 397, 404 (S.D.N.Y.1998); *In re Hanger Orthopedic Group, Inc.,* 418 F.Supp.2d 164, 169 (S.D.N.Y.2006).

While Marsh Defendants claim and Tiara acknowledges that Hurricanes Jeanne and Francis occurred in Florida, those hurricanes do not constitute the locus of operative facts involved in this matter. Rather, the locus of operative facts of this lawsuit centers on the misrepresentations and/or negligent advice provided by Marsh Defendants as a result of corporate decisions regarding policy coverage, meetings regarding how to respond to policy coverage inquiries, corporate directives, corporate policy, and corporate training, all of which, as a matter of law, "occur" in the Southern District of New York where the Marsh Defendants maintain their principal places of business or in the Middle District of Florida where Marsh USA maintains an office in Sunrise, Florida. Specifically, facts involving corporate decisions regarding policy coverage, and communications regarding how to respond to Tiara's concerns regarding the amount of coverage occurred at Marsh Defendants' principal place of business in New York, New York. Thus, it is clear that this factor weighs in favor of venue remaining in the Southern District of New York.

E.    **Location of Relevant Documents**

As the court in *Schnabel* indicated, in today's modern age this factor is neutral, with the advent of electronic discovery the documents can easily be produced with little travel to Florida and/or New York. *Schnabel,*, 322 F.Supp.2d at 518. Also, it is unnecessary to be at the damage location because Tiara's claims against the Marsh Defendants have little or no connection to the damage done by the hurricane. Instead, Tiara's claims against the Marsh Defendants are related to the amount of coverage that they procured on Tiara's behalf as well as the misrepresentations

and/or negligence by Marsh Defendants as it relates to the number of occurrences that were covered by the policy at issue.

### F.    Availability of Process

The majority of prospective witnesses will not be subject to the subpoena power of the Southern District of Florida.  Notably, all three of the Marsh Defendants maintain their principal place of business in New York, New York.  Further, upon information and belief, most of Marsh Defendants' corporate witnesses are located at Marsh Defendants' principal places of business in New York, New York and not subject to the subpoena power of the Southern District of Florida. Additionally, many of Tiara's witnesses live on the East Coast and can be more readily produced in the Southern District of New York. Thus, if this action remains in this judicial district, compulsory process is available to compel most of the key witnesses to appear in New York. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511 (1947) ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."). Thus, it is clear that this factor weighs in favor of venue remaining in the Southern District of New York.

### G.    The Relative Means of the Parties

This factor is neutral because the parties have the means to litigate this case in either Florida or New York.  However, transferring this case to Florida will increase the costs of litigation for Marsh Defendants because almost all of the material witnesses currently reside outside of Florida and most of the significant evidence is located in the Southern District of New York.

H.    **Familiarity with the Governing Law**

Marsh Defendants claim that venue should be changed because Tiara filed tort claims that should be governed by Florida law.  Notably, Marsh Defendants fail to take into account Tiara's breach of contract claim contained in its Amended Complaint.  While this matter now involves claims beyond mere torts, New York does utilize an "interest analysis" approach to determine which law governs the tort claim.  *Rosenberg v. Pillsbury Co., et al.,* 718 F.Supp. 1146, 1150 (S.D.N.Y. 1989).  This approach requires application of the law from the jurisdiction having the greatest interest in the litigation.  *Id.*  Under this "interest analysis" approach, party domiciles and locus of the tort are given significant weight.  *Id.* at 3.

Clearly, all three of the Marsh Defendants maintain their domicile in New York, New York.  Further, as previously mentioned misrepresentations occur where they are transmitted rather than where they are received. *In re Nematron Corp. Secs. Litig.,* 30 F.Supp.2d 397, 404 (S.D.N.Y.1998); *In re Hanger Orthopedic Group, Inc.,* 418 F.Supp.2d 164, 169 (S.D.N.Y.2006). This case centers on negligent advice, breaches of duties, and/or misrepresentations made by Marsh Defendants as a result of corporate decisions regarding policy coverage, meetings regarding how to respond to policy coverage inquiries, corporate directives, corporate policy, corporate training, and corporate materials, all of which occur in the Southern District of New York where the Marsh Defendants maintain their principal places of business.  Specifically, corporate decisions regarding policy coverage, and communications regarding how to respond to Tiara's concerns regarding the amount of coverage occurred at Marsh Defendants' principal place of business in New York.  Accordingly, New York law should apply to the tort claims against Marsh Defendants.  Thus, it is clear that this factor weighs in favor of venue remaining in the Southern District of New York.

I.    **Trial Efficiency and the Interests of Justice**

This factor involves judicial economy by analysis of the totality of circumstances. *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l,* 245 F. Supp. 2d 523, 527 (S.D.N.Y. 2003). Based on the totality of the circumstances, this matter should remain in the Southern District of New York.

Marsh Defendants claim the Southern District of Florida has already litigated similar legal issues in an action between Plaintiff and its public insurance adjuster arising out of the same hurricane damage at issue here. However, hurricane damage is not the central issue in this case. As previously mentioned, the material issues in this case revolve around negligence and/or misrepresentation by Marsh Defendants in advising Plaintiff of its insurance coverage. No matter what jurisdiction conducts a trial for this matter, it will have to become familiar with the facts and law surrounding this matter.

Finally, a trial in Florida would not be more expeditious than a trial in New York. This case was filed on October 19, 2007 and it has now been set for trial beginning some time in late January 2009. However, if this case were transferred to a different venue such as the Southern District of Florida, it would have to be re-filed and Plaintiff would have to wait approximately 16.3 months additional months according to the estimation contained in Marsh Defendants' brief. This would result in a trial taking place on or around June 2009 at the very earliest in the event of transfer. Thus, it is obvious that this factor weighs in favor of venue remaining in the Southern District of New York.

Clearly, Marsh Defendants have not sustained their burden of demonstrating a inconvenience from a trial in this district. It is difficult to observe any inconvenience resulting to Marsh Defendants from a denial of transfer, but inconvenience to the Plaintiff can easily be

foreseen should such a transfer be granted. Therefore, Marsh has failed to meet its "heavy burden" of establishing that a transfer of venue is necessary.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Transfer Venue, allow venue to remain in the Southern District of New York, and grant such further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

_s/ William E. Brueckner_____
William E. Brueckner (WB 6646)
**ERNSTROM & DRESTE, LLP**
317 Madison Avenue
Suite 703
New York, New York 10017
Telephone: (585) 473-3100
Facsimile: (585) 473-3113
*Local Counsel for Plaintiff*

Mark L. McAlpine, *pro hac vice*
Christopher E. Wasson, *pro hac vice*
**MCALPINE & ASSOCIATES, P.C.**
3201 University Drive
Suite 100
Auburn Hills, Michigan 48326
Telephone: (248) 373-3700
Facsimile: (248) 373-3708
*Lead Counsel for Plaintiff*

Dated: February 11, 2008

17