Slip Copy, 2007 WL 576128 (S.D.N.Y.)

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.
Shirley **MONTGOMERY**, on behalf of herself and others similarly situated, Plaintiffs,
v.
**TAP ENTERPRISES**, INC., Defendant.
No. 06 CV 5799(HB).
Feb. 26, 2007.

### OPINION & ORDER

Hon. HAROLD BAER, JR., District Judge.

*\*1* Plaintiff Shirley Montgomery ("Plaintiff") has brought this putative class action against defendant Tap Enterprises, Inc. ("Tap" or "Defendant"). Plaintiff alleges that Defendant failed to pay Plaintiffs overtime premium pay as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et. seq..

Defendant now moves pursuant to 28 U.S.C. § 1404(a) to transfer venue to the United States District Court for the Western District of Missouri (Southern Division), or alternatively, to the United States District Court for the District of Kansas.

For the reasons set forth below, the motion to transfer is granted.<u>FN1</u>

> FN1. The Court wishes to thank Shaun Pappas of Cardozo Law School for his assistance in researching and preparing this Opinion.

### I. BACKGROUND

A. *Underlying Facts of Complaint*

Named plaintiff Shirley Montgomery and putative named plaintiff Lisa Grant <u>FN2</u> are employed by Defendant Tap Enterprises. Plaintiffs' jobs are to travel the country in sales crews putting on "tool truck sales shows" for Defendant. See 1/8/2007 Pl.'s Mem. in Opp'n to Mot. to Transfer Venue ("Pl.'s Opp'n") at 1. Plaintiffs allege that they usually work fifteen (15) hour days, six (6) days a week, for which they are paid $80 to $85 per day. *Id.* According to Plaintiffs, those workers operating the tool truck sales shows are continuously on the road, except for five (5) days in December. *Id.* Plaintiffs thus allege that Defendant Tap failed to pay Plaintiffs overtime premium pay as required by the FLSA. Plaintiff's Complaint ("Pl.Compl.") at ¶ 1.

> FN2. On November 8, 2006, Plaintiff Shirley Montgomery filed an unopposed motion to amend her complaint to add Lisa Grant as a named plaintiff. (Grant, on August 8, 2006, "opted-in" to the lawsuit by filing a notice of consent to sue under the FLSA.) Montgomery's unopposed motion remains *sub judice*. For the

**EXHIBIT A**

sake of simplicity, references to "named plaintiffs" in this opinion refer to both Montgomery and Grant.

B. *Facts Relating to Venue*

Defendant Tap Enterprises is a corporation organized under the laws of the State of Nebraska. Its principal place of business is located in Spring Hill, Kansas. *See* 12/6/2006 Aff. of John Hamamy, General Manager of Tap Enterprises, Inc. ("Hamamy Aff.") at ¶ 4. Defendant is also registered and in good standing as a foreign corporation authorized to do business in Missouri. Hamamy Aff. at ¶ 12. Defendant states that its corporate and managing officers, and corporate records, are located in Spring Hill, Kansas. *See* Def.'s Second Mem. in Supp. of Mot. to Transfer Venue ("Def.Mot."), Dec. 6, 2006, at 4. Defendant is not a resident of New York. *See* Def's Reply Mem. in Supp. of Mot. to Transfer Venue ("Def. Reply Mem.") at 1. Of any state, the highest percentage of Defendant's total sales-9.2%-routinely occurs in Missouri. Def. Mot. at 2; Pl.'s Opp'n Mot. at 11.

Defendant states that of its 1,256 employees, 394 are residents of Missouri, comprising the largest percentage of any state (over 31%). Hamamy Aff. at ¶ 25. Further, according to Defendant, 184 employees are residents of Kansas, comprising the second-largest percentage of any state (15%).[FN3] *Id.* It is undisputed that only ten (10) potential class members live in New York state. Pl.'s Opp'n at 8. None of Defendant's current or former employees reside in the Southern District of New York. *Id.*

> FN3. Conversely, as plaintiffs note, more than 68% of Defendant's employees live outside of Missouri, and more than 85% live outside of Kansas. Pl. Opp'n Mot. at 7-8.

Neither of the named Plaintiffs resides in New York state. Plaintiff Shirley Montgomery resides in Springfield, Missouri.[FN4] Def. Mot. at 5. According to Defendant, during the more than two years that Montgomery was employed by Defendant, she worked three hundred twenty-two (322) days-but only fourteen days (14) in New York, and two (2) days in the Southern District of New York. *Id.* Plaintiff Lisa Grant's last known address, according to Defendant, is in Paris, Texas. *Id.* at 5. According to Defendant, from August 1, 2003 through December 13, 2003, Grant worked eighty-two (82) days-but only twelve days (12) in New York, and ten (10) days in the Southern District. *Id.* at 6.

> FN4. Springfield, Missouri happens to be the location of the Southern Division of the Western District of Missouri. Def. Mot. at 1.

**\*2** None of the parties' identified witnesses reside in New York. Def. Mot. at 12-15. Plaintiffs do not dispute this.

C. *Defendant's Motion to Transfer Venue*

On December 6, 2006, Defendant Tap filed this Motion to Transfer Venue to the Western District of Missouri (Southern Division), or alternatively, to the District of Kansas. Defendant argues that Plaintiffs' lawsuit has a minimal connection to the Southern District of New York, and that the relevant facts, records, and witnesses are located near Kansas City. Def. Reply Mem. at 1-2. Defendant further argues that transferring venue to either Missouri or Kansas would be more convenient for those potential plaintiffs who might opt in to the class action.

Plaintiffs, conversely, argue that venue in the Southern District of New York is proper based on the alleged violations of FLSA overtime provisions that have occurred in this District. Pl.'s

Opp'n at 10. Plaintiffs also claim that if the case were litigated in Missouri or Kansas, court appearances and depositions could require constant travel by plaintiffs' chosen counsel, which would increase plaintiffs' litigation expenses and thus, potentially decrease their potential recovery. *Id.* at 10-11.

## II. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006).[FN5] It does not mention counsel.

> FN5. Section 1404(a) strives to prevent "waste of time, energy, and money" and "to protect litigants, witnesses and the public against any unnecessary inconvenience and expense." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 27 (1960). Congress enacted this provision as a "federal housekeeping measure, allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).

A motion to transfer pursuant to 1404(a) rests within the "sound discretion" of the district court. *Schwartz v. R.H. Macy's, Inc.*, 791 F.Supp. 94 (S.D.N.Y.1992). The burden is on the movant to establish that there should be a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978); *see also Editorial Musical Latino Americana, S.A. v. Mar Int'l Records*, 829 F.Supp. 62, 66 (S.D.N.Y.1993) (movant must make "clear and convincing showing"). Although the plaintiff's choice of forum is entitled to substantial weight, this presumption is reduced if the cause of action bears "little material connection" to the chosen forum. *See, e.g., St. Regis Mohawk Tribe v. State of New York*, 774 F.Supp. 185, 189 (S.D.N.Y.1991); *see also Arrow Electronics Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 265 (S.D.N.Y.1991) (where the facts of the action bear little connection to the chosen forum, "plaintiff's choice is given reduced significance").

## III. DISCUSSION

When evaluating a motion to transfer, a court should consider the following factors: (1) the convenience of witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances. *See, e.g., Anadigics, Inc. v. Raytheon*, 903 F.Supp. at 617 (S.D.N.Y.1995). "The convenience of the witnesses and the parties are generally considered as the most important factors in a transfer application." *D'anton Jos, S.L. v. Doll Factory*, 937 F.Supp. 320, 322 (S.D.N.Y.1996); *see also Hubbell Inc. v. Pass & Seymour*, 883 F.Supp. 955, 962 (S.D.N.Y.1995) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.").[FN6]

> FN6. To succeed on a motion to transfer, Defendant must as a threshold matter establish that the action could have been brought in the proposed transferee district. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964). Secondly, Defendant must "demonstrate that the balance of convenience of the parties and witnesses and the interests of justice are in [his] favor." *See, e.g., Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 569 F.Supp. 773, 774 (D.D.C.1983). Because it is

undisputed that this action could have been brought in either the District of Kansas, or the District of Missouri, the first inquiry does not require examination.

*3 Here, I find that the totality of the factors favors transfer to the Southern Division of the Western District of Missouri. I will address each factor in turn.[FN7]

> FN7. Plaintiffs argue, as a threshold matter, that Defendant has waived any challenge to venue by admitting in their Answer that venue is proper in this District. See Defendant's Answer at ¶ 5 ("Defendant does not contest that venue is proper in this district."). However, unlike a motion to transfer venue for improper venue, "[t]he waiver provisions of [Fed.R.Civ.P.] 12(b) and (h)(1) do not apply to a motion to ... transfer on the ground of *forum non conveniens,* which 'may be addressed to the discretion of the court at any time.' " Kahn v. National R. Passenger Corp., 1986 U.S. Dist. LEXIS 29974, at *4-5 (S.D.N.Y.1986), citing Snam Progetti S.p.A. v. Lauro Lines, 387 F.Supp. 322, 323 (S.D.N.Y.1974); Leif Hoegh & Co. v. Alpha Motor Ways, Inc., 534 F.Supp. 624, 626 (S.D.N.Y.1982). Indeed, a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) on the ground of *forum non conveniens,* such as Defendant brings here, presupposes that venue is proper in the transferor court. See Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1368 n. 1 (11th Cir.2003). Plaintiffs' cases that address waiver of challenges to improper venue are thus inapposite. See, e.g., Tri-State Empl. Servs., Inc. v. Mountbatten Sur. Co., 295 F.3d 256, 261 n. 2 (2d Cir.2002); Miller v. Batesville Casket Co., 219 F.R.D. 56 (E.D.N.Y.2003).

A. *Convenience of Witnesses and Availability of Process*

"The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue." AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F.Supp.2d 525, 529 (S.D.N.Y.2004). Plaintiffs have identified potential witnesses who live in Kansas, Missouri, Oklahoma, Nebraska, and Texas. Def's Reply Mem at 7. Plaintiffs have not at this point in time identified one witness, or potential witness, that resides in New York state, or any of its adjoining states. Id. To the extent Plaintiffs may try to obtain oral testimony from class members, Defendants point out that less than 3% of those class members live in New York or its adjoining states. Def. Reply Mem. at 7.

Plaintiffs generally do not argue that New York is more convenient to the witnesses. Rather, Plaintiffs argue that the two venues are mutually inconvenient. See Consol. Metal Prods., Inc. v. Am. Petroleum Inst., 569 F.Supp. 773, 774 (D.D.C.1983) (1404(a) allows transfer to a "more convenient forum, not to a forum likely to prove equally convenient."). Yet given that the majority of witnesses, at this point in time, will likely be from the Midwest-including Kansas or Missouri-it is hard to say that Kansas or Missouri is not more convenient for potential witnesses.

To the extent that compulsory process may be an issue, it appears that while compulsory process might be available to compel some significant portion of the current potential witnesses to appear in Kansas or Missouri, it will not be available to compel the vast majority of the current potential witnesses to appear in New York. Cf. Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F.Supp. 247, 250 (S.D.N.Y.1974) ("courts generally transfer cases when important witnesses can not be compelled to testify in the forum, but could be subpoenaed in the transferee court.").

B. *Convenience of Parties*

For Defendant Tap, a Nebraska corporation with its principal place of business in Kansas,

Kansas is clearly a more convenient forum. Plaintiffs argue, without citing case law, that transferring the case "would greatly increase litigation costs" for the "low wage employees" who comprise the potential class. Pl.'s Opp'n Mot. at 15. It is true that Plaintiff's counsel is located in New York. Yet courts have generally accorded "little weight" to the convenience of plaintiffs' attorneys. See Bordiga v. Directors Guild, 159 F.R.D. 457, 463 (S.D.N.Y.1995); Kolko v. Holiday Inns, 672 F.Supp. 713, 715 (S.D.N.Y.1987).

As for plaintiffs themselves, only ten potential class members live in New York state, and none in the Southern District. It is worth noting as well that named Plaintiff Shirley Montgomery resides in Springfield, Missouri, the location of the Southern Division of the Western District of Missouri.

### C. Locus of Operative Facts

*4 The locus of operative facts is another "primary factor" in determining whether to transfer venue. Mattel, Inc. v. Procount Bus. Servs., 2004 U.S. Dist. LEXIS 3895 (S.D.N.Y.2004). Here, due to the itinerant schedule of Defendants' workers against whom the alleged violations were committed, the operative facts are spread throughout the United States.

Defendant argues that since the highest percentage of its sales are in Missouri, the cause of action is more substantially connected with Missouri. Def's Second Mem at 16. However, the difference in percentage is relatively small. For example, in fiscal year 2006, while 8.9% of Tap's sales occurred in Missouri, 3.6% occurred in New York. Id.

### D. Location of Documents

As noted, most, if not all, of the relevant documentation in this case is located in Defendant's headquarters in Kansas. No relevant documents are located in New York. Plaintiffs argue that the physical location of the documents is irrelevant given the availability today of electronic means of transmission. See In re Glenayre Techs., Inc. Sec. Litig., 982 F.Supp. 294, 300 (S.D.N.Y.1997).

The balance of interests here, albeit slight, favors transfer to Kansas.

### E. Relative Means of Parties

Plaintiffs allege that Defendant is a large corporation, and thus has ample means to travel to New York. Pl.'s Opp'n. at 14. Plaintiffs further argue that the class is comprised of low wage employees, and that transferring the case would greatly increase their litigation costs. Pl.'s Opp'n. at 15. However, as noted above, the convenience of plaintiffs' counsel is afforded little weight when considering a motion to transfer venue. Additionally, to the extent named Plaintiff Montgomery seeks to participate in the litigation, Missouri is a more convenient forum for her.

### F. Governing Law

Generally, there exists an interest in having the trial in a forum that is familiar with the governing law. See Frederick Joseph Jennis v. Duane Rood, et al., 2007 U.S. Dist. LEXIS 3321 (N.D.N.Y.2007). Here, Plaintiff solely alleges violations of a federal statute. Either forum is equally familiar with federal law.

Here, the balance of interests is neutral.

G. *Plaintiffs' Choice of Forum*

Plaintiffs' strongest argument against transfer is that Plaintiffs themselves chose to bring suit in New York. However, although the plaintiff's choice of forum is generally entitled to "substantial weight," this presumption applies with less force where the plaintiff chooses a foreign forum and the cause of action bears little relation to the chosen forum. *See, e.g., Bassili v. Chu,* 242 F.Supp.2d 223, 232 (W.D.N.Y.2002). Such is the case here.[FN8]

> FN8. "The deference owed to plaintiffs' choice of forum is further diminished where transfer is sought to the forum where plaintiffs reside." *Onyeneho v. Allstate Ins Co.,* 2006 U.S. Dist. LEXIS 85569, at *11 (D.D.C.2006) (citations omitted).

Additionally, Defendants argue that a plaintiff's choice of forum receives less deference in a purported class action, where "numerous potential plaintiffs ... [are] each possibly able to make a showing that a particular forum is best suited ..." *Eichenholtz v. Brennan,* 677 F.Supp. 198, 202 (S.D.N.Y.1988), citing *Koster v. Lumbermens Mutual Co.,* 330 U.S. 518, 524 (1947). Plaintiffs counter that because this lawsuit is a FLSA collective action, in which plaintiffs "opt-in"-rather than a typical Rule 23 class action, in which plaintiffs "opt-out"-that essentially, any plaintiffs who "opt-in" to the litigation will have affirmatively done so, and thus their choice of forum is entitled to greater deference. "Several courts have noted that the 'opt-in' structure of collective actions under section 216(b) of the FLSA strongly suggests that Congress intended to give plaintiffs considerable control over the bringing of a FLSA action." *Onyeneho v. Allstate Ins Co.,* 2006 U.S. Dist. LEXIS 85569, at *10 n. 2 (D.D.C.2006) (internal citations omitted), *citing, e.g., Johnson v. Big Lots Stores, Inc.,* 2005 U.S. Dist. LEXIS 2221, at *10-11 (E.D.La.2005) (declining to transfer FLSA case to another district for consolidation because plaintiffs had chosen to "opt-in" to litigation in original district).

*5 Plaintiffs' argument would be stronger in a situation where plaintiffs had already "opted-in" to the lawsuit, as opposed to here, where the litigation is nascent. In any case, whether plaintiffs "opt-in" or "opt-out" seems secondary to the ultimate convenience (or inconvenience) of the forum to the parties and witnesses involved. *See, e.g., Onyeneho v. Allstate Ins Co.,* 2006 U.S. Dist. LEXIS 85569, at *10 n. 2 (the fact that a "case has been designated a collective action under the FLSA is of little importance in the face of numerous factors weighing strongly in favor of transfer ...").

While Plaintiff's choice of New York counsels against transfer, because Plaintiffs have chosen a foreign forum, and the lawsuit bears little relation to New York, Plaintiffs' choice does not counsel against transfer as strongly as Plaintiffs would like.

H. *Interests of Justice*

Courts can consider trial efficiency and general "interests of justice" in considering a motion to transfer. *See Balaban v. Pettigrew Auction Co.,* 1997 U.S. Dist. LEXIS 22127, at *10-11 (S.D.N.Y.1997). However, the parties have put forth no evidence of circumstances, such as crowded docket conditions, that might militate a speedier prosecution of the action in one District as opposed to another. *See De Jesus v. National R. Passenger Corp.,* 725 F.Supp. 207, 209 (S.D.N.Y.1989). The balance of interests here is neutral.

## IV. CONCLUSION

Here, Plaintiffs have chosen a forum with little connection to the facts of the case. The totality of the factors, particularly the convenience of the parties and witnesses, favors transfer to either Kansas or Missouri. Because Defendant primarily requested transfer to

Missouri, and because named Plaintiff Shirley Montgomery resides in Missouri, Defendant's Motion to Transfer Venue to the Southern Division of the Western District of Missouri is GRANTED.

The Clerk of the Court is instructed to transfer this case to the Southern Division of the Western District of Missouri and remove it from my docket.

**SO ORDERED.**

S.D.N.Y.,2007.
Montgomery v. Tap Enterprises, Inc.
Slip Copy, 2007 WL 576128 (S.D.N.Y.)


Motions, Pleadings and Filings (Back to top)

• 2007 WL 697938 (Trial Motion, Memorandum and Affidavit) Defendant's Reply Memorandum in Support of Its Motion to Transfer Venue Pursuant to 28 U.S.C. | 1404(a) (Jan. 22, 2007)
• 2007 WL 697937 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant's Motion to Transfer Venue (Jan. 8, 2007)
• 2006 WL 4047906 (Trial Motion, Memorandum and Affidavit) Second Amended Memorandum of Law in Support of Defendant's Motion to Transfer Venue (Dec. 6, 2006)
• 2006 WL 3618893 (Trial Pleading) Defendant's Answer and Defenses to Plaintiff's Complaint (Oct. 11, 2006)
• 2006 WL 2582234 (Trial Pleading) Complaint (Aug. 1, 2006) Original Image of this Document (PDF)
• 1:06cv05799 (Docket) (Aug. 1, 2006)
END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 107633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

C
Howard v. Four Seasons Hotels Ltd.
S.D.N.Y.,1997.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Claudia S. HOWARD and Ted Howard, Plaintiffs,
v.
FOUR SEASONS HOTELS LIMITED, Defendant.
No. 96 Civ. 4587 (LAP).

March 10, 1997.

## MEMORANDUM & ORDER

PRESKA, District Judge:

*1 This action arises out of Four Seasons Hotels Limited's ("Four Seasons") allegedly negligent preparation and handling of a salad served to plaintiff Claudia Howard while a guest at Four Seasons. Defendant moves pursuant to § 1404(a) to transfer this action from the Southern District of New York to the District of Massachusetts. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

On November 2, 1993, while a guest at the Four Seasons Hotel in Boston, Massachusetts, plaintiff Claudia Howard consumed a bug-infested salad. (Plaintiffs' Complaint ("Compl."), ¶¶ 22-26). Plaintiff Claudia Howard alleges that as a result of the negligent preparation and handling of the salad, she has suffered personal and emotional distress. (Id.). In addition to seeking damages for negligence, plaintiff Claudia Howard claims damages as a result of the breach of implied and express warranties of fitness that arose with the purchase of the salad. Plaintiff Ted Howard, Claudia Howard's husband, seeks damages for loss of consortium. (Id. ¶¶ 45-48).

## DISCUSSION

### I. Transfer of Venue

The decision to transfer an action "lies within the sound discretion of the district court." *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993) (cited by *Friedman v. Revenue Management of New York,* 38 F.3d 668, 672 (2d Cir.1994)); accord *Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (noting, in the context of Section 1404, that "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis"); *Lykes Bros. S.S. Co., Inc. v. Sugarman,* 272 F.2d 679, 680 (2d Cir.1959) (stating that this decision is "peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation").

Notwithstanding this discretion, a district court must adhere to certain limitations. A court may transfer an action only if 1) the plaintiff could have brought the case initially in the proposed transferee forum; and 2) the transfer would promote the convenience of the parties and witnesses and would be in the interests of justice. *Baker v. Bennett,* 942 F.Supp. 171, 175-76 (S.D.N.Y.1996); see also *Joint Stock Society "Trade House of Descendants of Peter Smirnoff, official Purveyor to the Imperial Court" v. Heublein,* 936 F.Supp. 177, 185 (D.Del.1996) (citations omitted). As the United States Supreme Court held, "the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski,* 363 U.S. 335, 343-44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

Defendant resides in Massachusetts within the meaning of § 1391. Because the District Court for the District of Massachusetts has personal jurisdiction over defendant, this action could have origin-

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 107633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 2

ally been brought in this district. Thus, the first prerequisite is satisfied. Next, I must consider whether the transfer would promote the convenience of the parties and the witnesses.

*2 This second limitation on a court's discretion is governed by the statutory standard applicable to a motion to transfer. Section 1404(a) requires the moving party to satisfy a heavy burden. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978) (holding, in the context of Section 1404(a), that "[t]here can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum"), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Baker,* 942 F.Supp. at 176 (stating that "burden is on the moving party to establish that there should be a change of venue"); *Joint Stock Soc.,* 936 F.Supp. at 185 (same); *Anglo America Insurance Group, P.L.C. v. Calfed Inc.,* 916 F.Supp. 1324, 1327 (S.D.N.Y.1996). The moving party may meet its burden by applying the following established factors to guide the court's discretion:

(1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice.

*Baker,* 942 F.Supp. at 176 (citing *Dahl v. HEM Pharmaceuticals Corp.,* 867 F.Supp. 194, 195 (S.D.N.Y.1994)); *D'Anton,* 937 F.Supp. at 323.

1. Location of the Operative Facts

The defendants have submitted affidavits indicating that the locus of the operative facts in this case is Boston, Massachusetts. The purchase, preparation, and handling of the aphid-infested salad all occurred in Massachusetts. Plaintiffs concede that the operative facts did occur in Massachusetts. (Simon Aff. ¶ 8).

2. Convenience of the Parties and Witnesses

Plaintiffs rely primarily on the convenience of both party and non-party witnesses to oppose defendant's motion to transfer. "[T]he convenience of both party and non-party witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." *Frasca v. Yaw,* 787 F.Supp. 327, 331 (E.D.N.Y.1992) (citation omitted). According to plaintiffs' opposition papers, plaintiff Claudia Howard was expected to give birth in late January of 1997. (Simon Aff. ¶ 12 Plaintiffs' Memorandum of Law in Opposition to Defendant's Transfer Motion, p. 5). Although her doctors' admonitions against travelling during her pregnancy are presumably now moot, I also presume that she and/or Mr. Howard have the responsibility for caring for a newborn infant. Against this factor I must weigh the asserted inconvenience and alleged impossibility for Four Seasons to defend this action in the Southern District of New York.

Defendants do not argue that a trial in New York inconveniences it. Four Seasons is registered to do business in New York and has designated the principal location of its corporation as New York County. (Simon Aff., Ex. 2). Instead, defendant points to the residences of the witnesses it intends to call to argue inconvenience.

*3 "When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors,* 579 F.2d at 218. Defendant has submitted a list of witnesses it intends to call as well as a brief summary of the testimony it hopes to elicit from them. (Reply Affirmation of James Woolsey, III, sworn to on September 27, 1996 ("Woolsey Aff."), ¶ 3). Defendant states it will call the following witnesses: (1) Kyle Lott, the assistant manager on duty on November 2, 1993; (2) Seth Andrews, also an assistant manger on duty on November 2; (3) Peter Mansback, an employee in defendant's food and beverage department at the time of the incident; and (4) Jamie Mamano, the

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 107633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 3

Executive Chef at the time of the incident. (*Id.*). The last known addresses for all four of these witnesses are in Massachusetts. (*Id.*). I find the convenience to the plaintiffs, who presumably bear the responsibility of caring for a newborn, weighed against the inconvenience to these non-party witnesses does not militate in favor of a transfer but rather, at best, brings the balance of factors in equipoise. Thus, I look to additional factors to determine the asserted need for a transfer.

3. Availability of Process to Compel Attendance of Witnesses

More than the inconvenience to these witnesses, defendant emphasizes the impossibility of compelling attendance of these witnesses if the action continues in the Southern District of New York. Defendant no longer employs or exercises control over these witnesses. (*Id.*). Therefore, defendant argues, if this action proceeds in the Southern District of New York, these witnesses would be beyond the subpoena power of this court, and defendant would be prejudiced by its inability to call these witnesses. (*Id.* ¶ 4). *See Murray v. British Broadcasting Corp.*, 81 F.3d 287, 294-95 (2d Cir.1996) (in forum non conveniens analysis, inability of defendants to compel attendance of non-party witnesses favored dismissal); *Blanco v. Banco Industrial de Venezuela, S.A.*, 997 F.2d 974, 982-83 (2d Cir.1993).

Although "a plaintiff's choice of forum is generally given substantial weight,"*D'Anton JOS, S.L. v. The Doll Factory, Inc.*, 937 F.Supp. 320, 323 (S.D.N.Y.1996); *Joint Stock Soc.*, 936 F.Supp. at 186 ("A plaintiff's choice of forum is a paramount consideration in any determination of a transfer request, and the court should not disturb the plaintiff's choice lightly."), weighing the inconvenience to plaintiffs against the prejudice to defendant arising from its inability to call these witnesses, I conclude that the convenience of the party and non-party witnesses favors a transfer to the District of Massachusetts.

4. The Forum's Familiarity with the Governing Law

"[A] federal court sitting in diversity applies the forum state's choice of law rules to decide which state's substantive law applies." *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). New York choice of law rules require the application of Massachusetts law to plaintiffs' claims.[FN1] Even if this action were transferred, New York law would still govern which law should be applied to plaintiff's claims. *Weinstein v. Friedman*, 1996 WL 137313 at *1 ("if an action was transferred from a forum in which the action could have been maintained, then the transferee court must apply the choice of law rules of the transferor court") (citing *Van Dusen*, 376 U.S. at 638-39, 84 S.Ct. at 820-21). Because the District of Massachusetts is presumably more familiar with Massachusetts law than a court sitting in New York, this factor also weighs in favor of a transfer.

> FN1. Under New York's "interest analysis" approach, the law of the jurisdiction with the greatest interest in the outcome is applied. *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985). Because the negligent act occurred in Massachusetts and at least one of the parties resides in Massachusetts, New York choice of law rules would require the application of Massachusetts law. *Miller v. Bombardier, Inc.*, 872 F.Supp. 114 (S.D.N.Y.1995)

*4 After balancing the factors noted above, I find that the defendant has sustained its heavy burden of demonstrating that the transfer would promote the convenience of the parties and the witnesses and is in the interests of justice.

*CONCLUSION*

For the reasons set forth above, this action is transferred to the District of Massachusetts.

S.D.N.Y.,1997.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 107633 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

Howard v. Four Seasons Hotels Ltd.
Not Reported in F.Supp., 1997 WL 107633 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2068107 (S.D.N.Y.)

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.
ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W., On Behalf Of Itself And All Others Similarly Situated, Plaintiff,
v.
NUVELO, INC., Ted W. Love, Gary S. Titus, and Shelly D. Guyer, Defendants.
Barry Logan, Individually and On Behalf Of Himself and All Others Similarly Situated, Plaintiff,
v.
Nuvelo, Inc., Ted W. Love, Gary S. Titus, and Shelly D. Guyer, Defendants.
Arnold Giles, Individually and On Behalf Of Himself and All Others Similarly Situated, Plaintiff,
v.
Nuvelo, Inc., Ted W. Love, Gary S. Titus, and Shelly D. Guyer, Defendants.
Herbert Braker, Individually and On Behalf Of Himself and All Others Similarly Situated, Plaintiff,
v.
Nuvelo, Inc., Ted W. Love, Gary S. Titus, and Shelly D. Guyer, Defendants.
Nos. 07 Civ. 975(HB), 07 Civ. 1229(HB), 07 Civ. 1777(HB), 07 Civ.1953(HB).
July 19, 2007.

### JOINT OPINION AND ORDER

Hon. HAROLD BAER, JR., District Judge.

*1 Defendants Nuvelo, Inc. ("Nuvelo") and three of Nuvelo's individual officers and directors, Ted Love, Gary Titus, and Shelly Guyer (collectively, "Defendants") move to transfer venue over these four putative securities class actions to the Northern District of California.[FN1] Plaintiffs Electrical Workers Pension Fund, et. al. ("Plaintiffs") oppose.

> FN1. Four Nuvelo-related securities class actions before this Court are at issue in this motion- *Electrical Workers v. Nuvelo*, 07-cv-975 (S.D.N.Y); *Logan v. Nuvelo*, 07-cv-1229 (S.D.N.Y.); *Giles v. Nuvelo*, 07-cv-1777 (S.D.N.Y.); and *Braker v. Nuvelo*, 07-cv-1953 (S.D.N.Y.) The parties have agreed to delay this Court's consideration of Plaintiffs' motions to consolidate the four cases and appoint Lead Plaintiffs, as if the case is transferred, it may be more appropriate to let the transferee rule on those issues.
>
> Citations in this Opinion will be to documents filed in connection with *Electrical Workers v. Nuvelo*, 07-cv-975, unless otherwise noted.

For the reasons articulated below, Defendants' motion to transfer venue is GRANTED.

### I. BACKGROUND

A. *Underlying Facts of Action*

Nuvelo is a biopharmaceutical company, incorporated in Delaware and headquartered in San Carlos, CA, near Silicon Valley. *See* Affidavit of Shelly D. Guyer in Support of Defendants' Motion to Transfer Venue, Apr. 18, 2007 ("Guyer Aff."), ¶ 5; Complaint, *Logan v. Nuvelo*, 07-cv-1229, ¶ 11.

On January 5, 2006 (the beginning of the Class Period), Nuvelo announced a partnership with the company Bayer Health Care AG regarding "alfimephrase," Nuvelo's new drug in development that is designed to dissolve blood clots. Complaint ¶¶ 36-37. Nuvelo announced that Bayer would pay it $50 million up front, and potentially up to $335 million in additional payments, in exchange for the right to commercialize alfimephrase outside the United States. *Id.* at ¶ 36. Defendants allegedly stated in a conference call that they anticipated the "alfimephrase" drug would win FDA approval and thus reach the U.S. consumer market by 2008. *Id.* at ¶ 15. Nuvelo's CEO Ted Love allegedly predicted that the drug would generate $500 million in annual sales. *Id.* Nuvelo's stock price rose. *Id.*

On January 30, 2006, Nuvelo conducted a "follow-on" stock offering that raised over $119 million for the company. Complaint ¶ 16. Nuvelo's underwriters for this offering were JP Morgan, Lehman Brothers, and Deutsche Bank. *Id.* at ¶¶ 16, 26.

Over the next several months, Nuvelo embarked on Phase III clinical trials to test alfimephrase. Complaint ¶ 19. Nuvelo also made several public statements regarding alfimephrase. Some statements were in the form of press releases issued from Nuvelo's California headquarters. *See generally* Complaint ¶¶ 36-56; Guyer Aff. ¶ 6; Affidavit of Gary S. Titus in Support of Defendants' Motion to Transfer Venue, Apr. 18, 2007 ("Titus Aff.") ¶ 6. Some statements were allegedly made at presentations at approximately eight analysts' and investors' conferences in New York. *See* Declaration of David A. Rosenfeld In Support of Plaintiffs' Opposition ..., May 4, 2007 ("Rosenfeld Decl."), ¶ 2, Ex. A.

On December 11, 2006 (the end of the Class Period), Nuvelo announced that two Phase III trials (in technical terms, the "NAPA-2" and "SONOMA-2" trials) did not go as well as they hoped (or in Plaintiff's words, "failed"). *See* Complaint ¶¶ 56, 63. The company disclosed that prior clinical trials did not involve the use of a placebo; that any past effectiveness of the drug was not due to the drug itself, but other factors; and that other Phase III clinical trials (in technical terms, the "NAPA-3" and "SONOMA-3" trials) would be put on hold. See Memorandum of Law in Opposition ..., May 4, 2007 ("Pl.Opp."), at 4; Complaint ¶ 56. Nuvelo's stock dropped nearly 80%, from $19.55 to $4.05. Complaint ¶¶ 57, 64.

### B. *Facts Relating to Defendants' Motion to Transfer Venue*

**\*2** Nuvelo avers that the vast majority of operative facts, witnesses, and documents that relate to this litigation are located in the Northern District of California. Nuvelo does not have operations, offices, or employees in New York. Guyer Aff. ¶ 5; Titus Aff. ¶ 5. Nuvelo states that the three individual defendants, its senior management, its officers, and the vast majority of its employees are located at, or near, its headquarters in California. Guyer Aff. ¶¶ 5-6; Titus Aff. ¶ 5-6. Nuvelo states that the individual employees who helped prepare the press releases at issue are located at its headquarters in California, and that the press releases were issued from its headquarters. Guyer Aff. ¶ 6; Titus Aff. ¶ 6. Nuvelo states that the officers and employees that designed and analyzed the NAPA-2 and SONOMA-2 clinical studies at issue are all located at its headquarters in California. *Id.* Nuvelo states that most of the relevant documents are either located at its headquarters or at a separate warehouse in Union City, CA. Guyer Aff. ¶ 7.

Plaintiffs aver that Nuvelo or (it is not entirely clear) the individual Defendants made presentations at approximately eight analysts' and investors' conferences in New York during the Class Period, during which they made statements about the drug alfimephrase. *See*

Rosenfeld Decl. ¶ 2, Ex. A. Plaintiffs do not at this time specifically identify those particular statements in their Complaint.[FN2]

> FN2. Plaintiffs aver that after the Court appoints a Lead Plaintiff, that Plaintiff will file a consolidated amended complaint which will include a more comprehensive list of allegedly materially false and misleading statements. See Pl. Mem. Opp. at 7 n. 6.

Plaintiffs also note that Defendants' underwriters for their follow-on stock offering (before which, Plaintiffs allege, Defendants made false statements about the drug in order to raise additional funds) all have offices in New York. Complaint at ¶¶ 16, 26. Nuvelo rebuts that its primary contacts at two of these three underwriters, including JP Morgan, its lead underwriter, worked out of San Francisco, not New York. Guyer Reply Aff. ¶ 3.

Lastly, Plaintiffs note that one of Nuvelo's Phase III clinical trials took place in the Bronx, two other trials took place in New Jersey, and one trial took place in Pennsylvania. See Rosenfeld Decl., Ex. D. Nuvelo, however, points out that these particular trials in New York, New Jersey, and Pennsylvania were in fact the NAPA-3 and SONOMA-3 trials- *not* the failed NAPA-2 and SONOMA-2 trials which engendered this lawsuit. See Guyer Aff., Ex. G; Complaint ¶ 56; Rosenfeld Decl., Ex. D.

Plaintiffs do not allege in their papers before me that any of the class plaintiffs reside in New York.

## II. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006); *see generally, e.g., Montgomery v. TAP Enters.*, 2007 U.S. Dist. LEXIS 12702, at *6-8 (S.D.N.Y. Feb. 26, 2007) (Baer, J.).

A motion to transfer pursuant to § 1404(a) rests within the "sound discretion" of the district court. *Schwartz v. R.H. Macy's, Inc.*, 791 F.Supp. 94 (S.D.N.Y.1992). The burden is on the movant to establish that there should be a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978); *see also Editorial Musical Latino Americana, S.A. v. Mar Int'l Records*, 829 F.Supp. 62, 66 (S.D.N.Y.1993) (movant must make "clear and convincing showing"). Although the plaintiff's choice of forum is entitled to substantial weight, this presumption is reduced if the cause of action bears "little material connection" to the chosen forum. *See, e.g., St. Regis Mohawk Tribe v. State of New York*, 774 F.Supp. 185, 189 (S.D.N.Y.1991); *see also Arrow Electronics Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 265 (S.D.N.Y.1991) (where the facts of the action bear little connection to the chosen forum, "plaintiff's choice is given reduced significance"). This presumption is reduced further in class actions, particularly securities class actions. *See In re AtheroGenics Sec. Litig.*, 2006 U.S. Dist. LEXIS 15786, at *9 (S.D.N.Y.2006) (Holwell, J.) ( *"AtheroGenics"* ).

## III. DISCUSSION

*3 When evaluating a motion to transfer, a court should consider the following factors: (1) the convenience of witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the

relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances.[FN3] *See, e.g., Anadigics, Inc. v. Raytheon Co.*, 903 F.Supp. 615, 617 (S.D.N.Y.1995). "The convenience of the witnesses and the parties are generally considered as the most important factors in a transfer application." *D'anton Jos, S.L. v. Doll Factory*, 937 F.Supp. 320, 322 (S.D.N.Y.1996); *see also Hubbell Inc. v. Pass & Seymour*, 883 F.Supp. 955, 962 (S.D.N.Y.1995) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.").

> FN3. To succeed on a motion to transfer venue, Defendant must as a threshold matter establish that the action could have been brought in the proposed transferee district. *See, e.g., Montgomery v. TAP Enters.*, 2007 U.S. Dist. LEXIS 12702, at *9 n. 6, citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964). Secondly, Defendant must "demonstrate that the balance of the convenience of the parties and witnesses and the interests of justice are in [his] favor." *See Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 569 F.Supp.773, 774 (D.D.C.1983). Because it is undisputed here that these actions could have been brought in the proposed transferee district (i.e. the Northern District of California), the first inquiry does not require examination.

I will address the most relevant factors first.

A. *Plaintiff's Choice of Forum*

A plaintiff's choice of forum "is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *AtheroGenics*, 2006 U.S. Dist. LEXIS 15786, at *9, citing *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y.1998). However, "while it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions." *Id.*, citing, *e.g., Eichenholtz v. Brennan*, 677 F.Supp. 198, 202 (S.D.N.Y.1988) (in a securities class action, there will be "numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited," and thus plaintiff's choice receives less deference); *but see In re Geopharma Sec. Litig.*, 2005 U.S. Dist. LEXIS 8885, at *3-4 (S.D.N.Y.2005) (Scheindlin, J.) (*"Geopharma"*) ("affording less deference to representative plaintiffs does not mean they are deprived of all deference.").

Here, in this securities class action, plaintiff's choice of forum is entitled to less deference. Indeed, there is no allegation that any of the class plaintiffs reside in New York, such that those plaintiffs might be prejudiced by transfer. Even leaving the question of deference to plaintiff's choice of forum aside, there remains ample support to rule in favor of transfer based on the other factors, as further articulated below.[FN4]

> FN4. *See Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb*, 2006 U.S. Dist. LEXIS 36018, at * 13-14 (S.D.N.Y.2006) (Baer, J.) (*"Bausch & Lomb"*) ("Defendants argue ... that courts have accorded 'little weight' to plaintiff's choice of forum in securities class actions ... Whether that's so or not here, the other factors are persuasive.").

B. *Convenience of Parties*

Defendants Nuvelo, and the three individual Defendants, all reside in the Northern District of California. Guyer Aff. ¶¶ 5-6; Titus Aff. ¶ 5-6. As noted above, it appears no class plaintiffs reside in this District. This factor favors transfer.

Case 1:07-cv-09392-HB    Document 26-2    Filed 02/18/2008    Page 16 of 18

C. *Convenience of Witnesses and Availability of Process*
   ***4** Defendants argue the vast majority of witnesses aside from the individual Defendants (i.e. Nuvelo employees and ex-employees) are all located in California, and that process would not be available to compel their testimony in New York, were the actions to proceed to trial here.

   Plaintiffs aver that some non-party witnesses are located in New York. For example, Plaintiffs argue that Nuvelo's underwriters are located in New York. Defendants rebut, however, that the primary contacts for two out of three of Nuvelo's underwriters, including its lead underwriter, JP Morgan, are in fact located in San Francisco. *See* Guyer Reply Aff. ¶ 3. Plaintiffs also aver that securities analysts that follow Nuvelo are located in New York. Defendants rebut, however, that three of the analysts who follow Nuvelo are also based in San Francisco. *See* Guyer Reply Aff. ¶ 4. To the extent that Plaintiffs seek to call underwriters and securities analysts at trial, it is doubtful Plaintiffs will experience any prejudice by transfer.

   Plaintiffs also aver that some non-party witnesses are located *near* (albeit not *in*) New York. For example, Plaintiffs aver that Bayer's United States corporate headquarters is located in Pittsburgh, and its pharmaceutical division is located in West Haven, CT. See Pl. Mem. Opp. at 10. Additionally, Plaintiffs aver that FDA employees are located in Washington, DC. *See Geopharma,* 2005 U.S. Dist. LEXIS 8885, at *7 (noting that *inter alia,* FDA employees are located in Washington, DC, and calling this factor "neutral"). Typically, however, district courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum. *See, e.g., AtheroGenics,* 2006 U.S. Dist. LEXIS 15786, at *15, citing <u>Wechsler v. Macke Int'l Trade, Inc., 1999 WL 1261251, at *6 (S.D.N.Y.1999)</u> ("The Court dismisses from consideration the convenience of witnesses who are located outside both the current and transferee forums.").

   More importantly, "it is the nature of the testimony and not the number of prospective witnesses on each side that is important." *In re Nematron Corp. Secs. Litig.,* 30 F.Supp.2d at 402. Here, notwithstanding that some tangentially related witnesses may reside in or near New York, the far greater number of the most material witnesses-i.e., the individual Defendants and Nuvelo employees-are located in California. *See AtheroGenics,* 2006 U.S. Dist. LEXIS 15786, at *15 (finding that this factor favored transfer to Georgia because Defendants and employees resided there, despite the fact that securities analysts and defendants' public relations firm resided in New York); *Nematron Corp. Secs. Litig.,* 30 F.Supp.2d at 402 (finding that this factor favored transfer to Defendant's home district because "testimony more critical and extensive is likely to be provided by the parties and witnesses residing" there).

   In sum, this factor favors transfer to California.

D. *Locus of Operative Facts*
   ***5** Nuvelo argues that the locus of the operative facts of this lawsuit-i.e., Nuvelo's allegedly fraudulent statements contained in its press releases-were issued from its company headquarters in California. "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *See, e.g., Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb,* 2006 U.S. Dist. LEXIS 36018, at *16 (where "all of the press releases and corporate filings, as well as the alleged misstatements, originated at Bausch & Lomb headquarters in Rochester," this factor favored transfer); <u>*In re Nematron Corp. Secs. Litig.,* 30 F.Supp.2d 397, 404 (S.D.N.Y.1998)</u>; <u>*In re Hanger Orthopedic Group, Inc.,* 418 F.Supp.2d 164, 169 (S.D.N.Y.2006)</u>; *AtheroGenics,* 2006 U.S. Dist. LEXIS 15786, at *13.

The locus of the operative facts of this lawsuit centers on the misrepresentations made by Nuvelo in its press releases-all of which, as a matter of law, "occur" in California. Plaintiffs' attempts to aver that other allegedly "operative" facts occurred in New York are unavailing. For example, the clinical trials that occurred in or near the Southern District of New York were not the failed trials that engendered the fraud alleged in these actions. And even had Plaintiffs alleged specific misrepresentations that occurred at analysts' conferences in New York, courts have generally not found that statements at analysts' conferences alone warranted transfer where the "locus of all relevant decisionmaking" emanated from the company's headquarters, as is the case here. See *AtheroGenics*, 2006 U.S. Dist. LEXIS 15786, at *12, 13 n. 5.

Because the "locus of operative facts" here is in California, this factor favors transfer.[FN5]

> FN5. Although the majority of Courts in this district follow this approach, one Court in this district takes a different view. See *Geopharma*, 2005 U.S. Dist. LEXIS 8885, at *7 (where defendants argued that press releases were drafted at headquarters, and plaintiffs argued that information was disseminated via the NASDAQ exchange in New York, Court held that "operative facts" were spread across many districts).

E. *Location of Relevant Documents*

Defendants argue that the relevant documents are available either at its headquarters, or at a separate storage facility in Union City, CA. "Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession." *Blass v. Capital Int'l Sec. Group*, 2001 U.S. Dist. LEXIS 3504, at *17-18 (E.D.N.Y.2001).

Although Plaintiffs aver that some documents relating to a) the underwriters, b) Bayer, or c) the clinical trials will be produced from or near New York, as above, these documents (to the extent they actually reside in New York), like the witnesses, are far less relevant than the documents in California. This factor favors transfer.

F. *Remaining Factors*

The factors of a) the relative means of the parties, b) the respective forums' familiarity with the governing law, and c) trial efficiency and the interests of justice are all neutral.

### IV. CONCLUSION

Because the majority of factors favor transfer, Defendants' motion to transfer venue for these four actions- *Electrical Workers v. Nuvelo*, 07-cv-975 (S.D.N.Y); *Logan v. Nuvelo*, 07-cv-1229 (S.D.N.Y.); *Giles v. Nuvelo*, 07-cv-1777 (S.D.N.Y.); and *Braker v. Nuvelo*, 07-cv-1953 (S.D.N.Y.)-is GRANTED.

*6 The Clerk of the Court is instructed to transfer these four actions to the Northern District of California and remove them from my docket.

**SO ORDERED.**

S.D.N.Y.,2007.
Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo, Inc.
Slip Copy, 2007 WL 2068107 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

- 2007 WL 1994003 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Transfer Venue (May 10, 2007)
- 2007 WL 1994002 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue to the Northern District of California (May 4, 2007)
- 2007 WL 1645926 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Transfer Venue (Apr. 18, 2007)
- 2007 WL 1645954 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Transfer Venue (Apr. 18, 2007)
- 2007 WL 1645975 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Transfer Venue (Apr. 18, 2007)
- 2007 WL 1368435 (Trial Pleading) Complaint for Violations of Federal Securities Laws (Mar. 6, 2007)
- 1:07cv01953 (Docket) (Mar. 6, 2007)
- 1:07cv01777 (Docket) (Mar. 1, 2007)
- 2007 WL 1025454 (Trial Pleading) Class Action Complaint (Feb. 16, 2007)
- 1:07cv01229 (Docket) (Feb. 16, 2007)
- 1:07cv00975 (Docket) (Feb. 9, 2007)

END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.